# EXHIBIT 1

TRADEMARK

Attorney Docket No. 20750-58

Date of Deposit: July 16, 2002

I hereby certify that this paper or fee is being deposited with the United States Postal Service by "First Class Mail" service under 37 C.F.R. 1.8 on the date indicated above and is addressed to the Commissioner for Trademarks, BOX RESPONSES NO FEE, 2900 Crystal Drive, Arlington, VA 22202-3513.

TOWNSEND AND TOWNSEND AND CREW LLP

By: _____

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | Examining Attorney: Joseph L. Manalili |
| APPLE COMPUTER, INC. | Trademark Office: 110 |
| Serial No. 78/089,144 (and Child Application - serial number unassigned) | AMENDMENT |
| Filed: October 18, 2001 | |
| Mark: IPOD | |

Commissioner for Trademarks
BOX RESPONSES NO FEE
2900 Crystal Drive
Arlington, VA 22202-3513

Madam:

This responds to the Office Action dated January 16, 2002.

### AMENDMENT

Applicant requests that the description of goods in this application be amended in its entirety as follows:

**Portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, and audio files; computer software for use in organizing, transmitting, manipulating, and reviewing text, data, and audio files on portable and handheld digital electronic devices in International Class 9.**

12/18/02  12:22 FAX 415 576 0300        TOWNSEND&TOWNSEND&CREW                    ⌀004/022

Attorney Docket No. 20750-58
Serial No. 78/089,144
Mark: IPOD

## REMARKS

Applicant has filed a Request to Divide (courtesy copy attached as Exhibit A) with the Divisional Unit so that the below-identified goods (being a portion of the goods in Class 9, as amended) become the child application:

> Portable and handheld digital electronic devices in the nature of MP3 players for recording, organizing, transmitting, manipulating, and reviewing audio files; computer software for use in organizing, transmitting, manipulating, and reviewing audio files on portable and handheld digital electronic devices in International Class 9.

The remaining goods, as follows, continue in the parent application:

> Portable and handheld digital electronic devices, except for MP3 players, for recording, organizing, transmitting, manipulating, and reviewing text, data, and audio files; computer software for use in organizing, transmitting, manipulating, and reviewing text, data, and audio files on portable and handheld digital electronic devices in International Class 9.

I. **BECAUSE THERE IS NO LIKELIHOOD OF CONFUSION BETWEEN APPLICANT'S MARK AND THE PRIOR-FILED MARKS, THE APPLICATION SHOULD BE APPROVED FOR PUBLICATION**

As amended in the child application, Applicant seeks to register IPOD for its well-known handheld digital music player. See *www.apple.com*. Subject to entry of the above clarifying amendment, Applicant believes that the Examining Attorney's initial concerns about confusion with several prior-filed applications for a variety of distinct and unrelated goods are unfounded. Applicant therefore requests that the Examining Attorney approve at least the child application[1] for publication after entry of the clarifying amendment requested above.

---

[1] Pursuant to telephone discussions with the Examining Attorney on July 8, 2002, Applicant understands that the Examining Attorney may not agree after considering this response that both the parent and child applications are in condition for publication. Applicant requests that the Examining Attorney view each application independently on its merits and not delay publication of one while issues concerning the other are outstanding.

Attorney Docket No. 20750-58
Serial No. 78/089,144
Mark: **IPOD**

The Examining Attorney identified six prior-filed applications as possible impediments to Apple's **IPOD** registration, one of which has since been expressly abandoned.[2] With respect to the remaining applications, no likelihood of confusion could result from registration of Apple's **IPOD** mark for the following reasons:

### A.  The goods are unrelated and marketed to different consumers

The goods identified in each of the cited applications are unrelated to Apple's well-known **IPOD** music player. Unrelated goods are not likely to be confused. *In re E.I. DuPont de Nemours & Co.*, 426 F.2d 1357, 1361-62 (C.C.P.A. 1973). Where, as here, goods are not reasonably interchangeable by consumers for the same purpose, the advertising orientation for each will be different, making confusion even more unlikely. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979); *DuPont*, 426 F.2d at 1361-62 (noting that "dissimilarity of established, likely to continue trade channels" is a factor indicating no likelihood of confusion); *Oxford Industries, Inc. v. JBJ Fabrics, Inc.*, 6 U.S.P.Q.2d 1756 (S.D.N.Y. 1988) (no likelihood of confusion between **JBJ WEARING APPAREL** and **JBJ FABRIC PRINTING** since the parties dealt in different channels of trade).

### 1.  IPOD (Ser. No. 78/018,061)

The '061 application is for a "public Internet kiosk enclosure containing computer hardware." This product apparently allows consumers to surf the internet from a publicly available kiosk. Apple's **IPOD**, on the other hand, allows consumers to store, manage, and play audio files on a "pocket-sized" device. Apple's **IPOD** device is not an internet surfing tool for public use, but a personal music player with embedded file management software. Apple's

---

[2] Voice Technologies Group's express abandonment of its application for **POD** (U.S. Serial No. 75/854,962) moots the Examining Attorney's concerns about this reference.

Attorney Docket No. 20750-58
Serial No. 78/089,144
Mark: **IPOD**

hand-held music player and the computer kiosk in the referenced application serve different functions, not in any manner interchangeable.

2. **IPOD** (Ser. No. 76/090,687)

The '687 application covers "prerecorded computer software for generating printed products over a global communications network." Either printing services or consumers wishing to custom order printed products, such as brochures, checks, envelopes, forms, and business cards, would be the market for such products. Again, Apple's **IPOD** music player has no functions related to the design or sale of custom-printed items. Consumers could not create printed greeting cards or the like using Apple's **IPOD** player, and would logically not expect that they would be able to, given the nature of Apple's audio player and related software. Apple's **IPOD** player thus is not related to the applied-for internet print-on-demand software product, making confusion unlikely.

3. **IPODZ** (Ser. No. 76/071,644)

The '644 application for **IPODZ**, a different mark, covers a wide variety of goods and services, none related to Apple's **IPOD**. Specifically, in Class 9, the '644 application is for "flight simulator machines; computerized amusement rides; computer automated retail recreational machines; communications software for connecting flight simulator machines and users over a global computer network; computer game software and video game software; eyewear, namely sunglasses and goggles." Such goods appear to be intended for consumers wishing to engage in flight simulation games, either in simulator machines or over the internet. Apple's **IPOD** player and software have nothing to do with flight simulation, amusement rides, retail recreation machines, computer/video games, eyewear, or any of the other goods and services listed in the '644 application. Because Apple's **IPOD** music player and the wide variety of goods and services identified in the **IPODZ** application serve completely different functions,

12/18/02  12:23 FAX 415 576 0300        TOWNSEND&TOWNSEND&CREW                    ☒007/022

Attorney Docket No. 20750-58<br>
Serial No. 78/089,144<br>
Mark: **IPOD**

they are likely to be marketed to distinct consumer groups through different channels, and unlikely – in any event – to be confused with respect to source.

4. **POD** (Ser. No. 76/068,419)

Similarly, the goods listed in the '419 application are unrelated to Apple's **IPOD** player. The '419 application is for "computer programs, namely client software programs for managing, viewing and editing files, messages, multimedia content, audio and video content, appointments, contacts, and other digital materials in conjunction with a network server in the field of user productivity, entertainment, and communication," whereas Apple's amended and divided application identifies Apple's **IPOD** as a "portable and handheld digital electronic device in the nature of an MP3 player for recording, organizing, transmitting, manipulating, and reviewing audio files [and] computer software for use in organizing, transmitting, manipulating, and reviewing audio files on portable and handheld digital electronic devices." It is clear from the '419 application that the **POD** product, unlike Apple's **IPOD**, is a <u>network-based</u> file sharing utility. Apple's **IPOD** music player, in contrast, is a hand-held device, widely promoted and praised for being small, lightweight, and self-contained. The **IPOD** software enables file downloading from the user's computer onto the **IPOD** player and then manages and plays those downloaded files on the player. Apple's **IPOD** software is not capable – as its appears the **POD** product is – of coordinating computer files on a networked server to enhance business productivity. Indeed, as a leisure-time device, Apple's **IPOD** would not likely be associated by consumers with network-based software with business applications, such as the **POD** product appears to be.

Attorney Docket No. 20750-58
Serial No. 78/089,144
Mark: **IPOD**

5. **IPOD** (Ser. No. 75/854,960)

The goods identified in the '960 application[3] are also unrelated to Apple's **IPOD** player and related software. The '960 application is for a "protocol converter for changing proprietary digital station set information to a standard protocol suitable for transmission over an internet provider." The goods described in the '960 application convert data at the network-level from a proprietary format to a standard format in order to effect transmission over the internet. Apple's **IPOD** music player, on the other hand, is a consumer electronics device designed for personal entertainment. Apple's **IPOD** and the protocol converter in the '960 application serve completely different functions, are marketed to different groups of consumers through distinct channels, and are thus not likely to be confused as to source.

B. **The marks are different in appearance, pronunciation, meaning, and commercial impression**

Dissimilar marks are not likely to be confused. *DuPont*, 426 F.2d at 1361-62. As detailed below, various differences between Apple's **IPOD**, a fanciful term coined by Apple and closely linked in commercial impression with Apple's family of well-known "I"-formative marks,[4] and the marks in the referenced applications with respect to appearance, pronunciation, meaning, and commercial impression, make confusion unlikely.

Two of the identified applications are for marks clearly different in appearance and sound from Apple's: **POD** and **IPODZ**. The **POD** mark in the '419 application for network software

---

[3] It appears that Intel Corporation acquired Voice Technologies, the original applicant for the '960 application, in February of 2000 and has renamed the product the **INTEL NETSTRUCTURE**. *See* Intel press release and product specification attached as Exhibit B. Apple expects that the referenced application will thus go abandoned in due course. For this reason, in addition to those set forth above, the '960 application should not impede publication of Apple's **IPOD** application.

[4] **IMAC®**, **IBOOK®**, **IPHOTO EXPRESS®**, **IPHOTO PLUS & Design®**, **IPHOTO™**, **IMOVIE™**, **IPOD™**, **IDVD™**, and **ITUNES™**

Attorney Docket No. 20750-58
Serial No. 78/089,144
Mark: **IPOD**

also has a distinct meaning, being an acronym for "Professional Online Desktop." *See* excerpt from OmniPod's website at Exhibit C. Presumably, the **IPOD** mark in the '687 application for online custom printing software is an acronym for "Internet Print on Demand" or the like.

Given the significant difference in goods, it is unlikely that any commercial impression formed by the prior pending applicants' dissimilar marks would be "carried over" to the different audience of consumers seeking a handheld, portable electronic audio player.

C. **Considering all the factors, there is no likelihood of confusion between Apple's IPOD and the marks in any of the prior filed applications**

Other *DuPont* factors confirm that confusion would be unlikely between Apple's **IPOD** and any of the marks in the referenced applications.

Consumers are likely to use care in purchasing expensive goods. *DuPont*, 426 F.2d at 1361-62. Apple's **IPOD** product sells for about $400 to $500. It appears that the goods in the referenced applications are also expensive, not likely to be purchased on impulse.

Professional buyers of technical goods such as internet kiosks ('061 Application) and networked and commercial software goods ('687, '419, and '960 Applications) are also presumed to be brand discriminating. Individual consumers of prestige personal electronics devices such as Apple's **IPOD** player are also mindful of brand sources. These two consumer groups – distinct from each other but both focused on distinguishing product source – are not likely to mistakenly believe that Apple's **IPOD** and the various applied-for goods are related with respect to source.

Due to the completely different channels of trade for sales of the prior applicants' products and Apple's **IPOD** players, there is no "interface" between Apple and the prior applicants, further reducing the likelihood of confusion. *Id.*

Finally, in determining likelihood of confusion in infringement litigation, courts consider evidence of the intent of the adopting party. *AMF v. Sleekcraft*, 599 F.2d 341 (9th Cir. 1979);

Attorney Docket No. 20750-58
Serial No. 78/089,144
Mark: **IPOD**

Restatement of Torts §§ 729, 731. Consideration of this factor may also assist the Examining Attorney in his *ex parte* examination. In this case, the marks, goods, and channels of trade for the goods of the respective parties are so different that Apple would not have believed, and still does not believe, that there could be any likelihood of confusion. Such good faith adoption is further evidence that registration of Apple's **IPOD** mark for its music player device is unlikely to create consumer confusion.

For all of the reasons stated above, there is no likelihood that the relevant class of cautious consumers would confuse the goods to be offered under the prior pending marks with the unrelated music players sold under Apple's dissimilar mark.

## CONCLUSION

Applicant believes that the child application, if not also the parent application, is now fully in condition for passage to publication and prompt action to that end is earnestly solicited. If a telephone conversations would advance this application, please call the undersigned. The Applicant appreciates the Examining Attorney's thoughtful assistance in preparing this response.

Respectfully submitted,

TOWNSEND and TOWNSEND and CREW LLP

Dated: July 16, 2002    By: _____
                              John C. Baum
                              *Attorneys for Applicant*

Two Embarcadero Center, 8th Floor
San Francisco, CA  94111-3834
Telephone: (415) 576-0200
Direct: (415) 273-7523
Facsimile: (415) 576-0300
SF 1352806 v1