| | |
|---|---|
| David J, Miclean (#115098/miclean@fr.com)<br>FISH & RICHARDSON P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, California 94063<br>Telephone: (650) 839-5070<br>Facsimile: (650) 839-5071<br><br>Lisa M. Martens (#195824/martens@fr.com)<br>Andrew M. Abrams (#229698/abrams@fr.com)<br>FISH & RICHARDSON P.C.<br>12390 El Camino Real<br>San Diego, California 92130<br>Telephone: (858) 678-5070<br>Facsimile: (858) 678-5099<br><br>Attorneys for Plaintiff<br>APPLE COMPUTER, INC. | Charles J. Veverka (*Pro Hac Vice*)<br>Robert E. Aycock (*Pro Hac Vice*)<br>Brett I. Johnson (*Pro Hac Vice Pending*)<br>WORKMAN / NYDEGGER<br>1000 Eagle Gate Tower<br>60 East South Temple<br>Salt Lake City, Utah 84111<br>Telephone: (801) 533-9800<br>Facsimile: (801) 328-1707<br><br>William S. Farmer (#46694)<br>Jacob Alpren (#235713)<br>COLLETTE ERICKSON FARMER & O'NEILL LLP<br>235 Pine Street, Suite 1300<br>San Francisco, California 94104<br>Telephone: (415) 788-4646<br>Facsimile: (415) 788-6929<br><br>Attorneys for Defendant<br>PODFITNESS, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

| | |
|---|---|
| APPLE COMPUTER, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>PODFITNESS, INC., and DOES 1-100, inclusive,<br><br>        Defendants. | Case No. C 06-5805 SBA<br><br>**JOINT MEET AND CONFER LETTER [REDACTED VERSION]** |

Pursuant to the Notice of Reference and Order re Discovery Procedures issued by this Court on February 26, 2007, the parties to the above-entitled action jointly submit this Meet and Confer Letter.

# PODFITNESS' POSITION[1]

## I.     INTRODUCTION AND FACTUAL SUMMARY

On September 21, 2001, Apple Computer, Inc. ("Apple") filed suit alleging trademark infringement and variations thereof against Podfitness, Inc. ("Podfitness"). During subsequent discovery in this matter, in response to Apple's document requests, Podfitness undertook a thorough search for responsive documents and produced such documents to Apple. One of the produced documents, identified by control number PF 001014 contains undiscoverable information, which is protected by the attorney-client privilege. Specifically, this document provides, memorializing the substance of a Podfitness marketing meeting:

**REDACTED – [FILED UNDER SEAL]**

Podfitness' counsel was not aware that the document containing the privileged information was produced until it was attached to one of Apple's confidential submissions. Immediately upon learning of the document, Podfitness' counsel undertook an investigation to determine, *inter alia*, where the substance of this communication originated, in order to determine whether the document did in fact contain attorney-client privileged communications. After discovering the facts, which include the fact that the legal advice came from a Podfitness attorney, during the course of representation, it was readily apparent that the document does indeed contain privileged information.

Under the Stipulated Protective Order, a privileged document that was erroneously produced must be returned if after learning of the inadvertent production, the party that produced the document acts promptly to designate it as privileged and requests its return. Podfitness believes that it has met these criteria for the document bearing control number PF 001014 that was erroneously produced.

---

[1] This section contains Podfitness' position with respect to this discovery dispute. Apple does not stipulate to or admit any assertions contained within this section.

1  Podfitness has requested the original document bearing control number PF001014 be
2  returned and replaced with a redacted version in multiple letters to Apple's counsel, as well as in a
3  telephonic conference and an in-person meet and confer.  Apple's counsel, however, has refused
4  to return the document, disputing: (1) that it is privileged and (2) that Podfitness acted "promptly"
5  upon discovery of the inadvertently produced document.  As discussed below, both of Apple's
6  contentions lack merit.

**II.   DOCUMENT NUMBER PF001014 SHOULD NOT BE REDACTED**

**A.   Facts[2]**

In connection with Podfitness' filing of a trademark application, a Podfitness employee, Teri Sundh sought legal advice from Podfitness' legal counsel, Workman Nydegger.  Specifically, Ms. Sundh had a confidential conversation with a Workman Nydegger attorney, Richard Gilmore, wherein Mr. Gilmore provided Podfitness, through its agent, Ms. Sundh, legal advice.

Sometime after the confidential conversion wherein Mr. Gilmore provided the legal advice, Ms. Sundh set forth her understanding of a portion of that legal advice in a marketing meeting, held on November 29, 2005, which understanding was memorialized in a document bearing control number PF001014.  The reason Ms. Sundh re-conveyed her understanding of the legal advice is, as evidenced by the document itself Podfitness was taking certain actions based upon the legal advice, and it was necessary to disclose to the marketing people the changes that would occur so such changes could be implemented.  Those in attendance at the meeting were Jeff Hayes, who was the CEO of Podfitness; Teri Sundh, who was the Executive Vice President of Strategic Development for Podfitness; Dave Malone, who was a shared employee of Podfitness and Power Music;[3] and Carol Del Guidice, who was the Affiliate Sales Coordinator of Podfitness.

**B.   Argument**

The Ninth Circuit has explained that legal advice an attorney gives to a client is protected from discovery by the attorney-client privilege. "At the outset, it is important to

---

[2] The facts set forth in this letter by Podfitness' counsel can be substantiated by declaration if so desired by the Court.
[3] Power Music was also a part owner of Podfitness.  Any expenses paid by Power Music with respect to Mr. Malone's employment were credited to Power Music's equity in Podfitness.

recognize that the attorney-client privilege is a two-way street: 'The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures.'" *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (quoting *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)).

"The attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges." *Bauer*, 132 F.3d at 510. The privilege is intended to encourage full and frank communication between attorneys and their clients. In the words of the Supreme Court, 'the privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.'" *United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir. 1999) (citation omitted). "[W]here attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure. As the Supreme Court has repeatedly cautioned, 'an uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'" *Id*. (citation omitted).

Confidential communications to third persons that are reasonably necessary to accomplish the purpose for which the attorney providing the advice was consulted does not waive the privilege. *See QST Energy, Inc. v. Mervyn's*, 2001 U.S. Dist. LEXIS 23266 at * 8 (N.D. Cal. 2001) (citing *Insurance Co. of North America v. Superior Court*, 108 Cal.App.3d 758, 765 (1980) ("While involvement of an unnecessary third person in attorney-client communications destroys confidentiality, involvement of third persons to whom disclosure is reasonably necessary to further the purpose of the legal consultation preserves confidentiality of communication.").

As set forth above, the communication between Podfitness' counsel, a Workman Nydegger attorney, Richard Gilmore, providing legal advice falls squarely within the attorney-client privilege and is protected from discovery. *See Bauer*, 132 F.3d at 510. The legal advice was given during the course of legal representation and was intended to be a confidential communication between the client and its counsel. Consequently, the communication was privileged and undiscoverable. *See id*.

1    Second, there was no waiver of the privilege by disclosure of the advice during the
2 marketing meeting because all in attendance were Podfitness employees (Mr. Malone was a shared
3 employee of Podfitness and Power Music, and Power Music also owned a share of Podfitness) and
4 the disclosure was made to implement the advice.  Moreover, under controlling authority, even
5 assuming *arguendo* that Mr. Malone was not a Podfitness employee, but rather a third party, as
6 asserted by Apple, there would still be no waiver by disclosure to Mr. Malone because the
7 disclosure was made for the common interest of acting upon the advice in furtherance of the
8 purpose of the legal advice.  *See QST Energy*, 2001 U.S. Dist. LEXIS 23266 at * 8; *Insurance Co.*
9 *of North America*, 108 Cal.App.3d at 766 ("It may also be seen in virtually all instances of waiver,
10 where the third persons present were found either to be strangers to the attorney-client consultation
11 or to possess interests adverse to the client.").  Indeed, the legal interest of Podfitness and Power
12 Music were identical—to avoid a lawsuit against them by Apple Computer.

13    The authority cited by Apple on this point is not relevant to the present dispute.  For
14 example, Apple cites *New Orleans St. v. Griesedieck*, 612 F. Supp. 59, 63 (D. La. 1985) for
15 support of its waiver position.  *Griesedieck*, however, was decided under Louisiana state law.  *Id*.
16 Moreover, *Griesedieck* indicates that there would be no waiver under the present circumstances,
17 because that case was decided on the ground that "the presence of [third parties] Gillette and
18 Waite, *who were neither partners nor clients*, negate the confidential element of the meeting and
19 its minutes."  *Id*. (emphasis added.)  Conversely, in the present case, Mr. Malone was both a
20 shared employee of Podfitness and an agent of a part owner and business partner of Podfitness,
21 Power Music.  The holding of *Griesedieck* thus supports Podfitness' position rather than Apple's
22 position on this issue.

23    Based on the foregoing, the information contained in the second paragraph of the
24 document identified by control number PF 001014 is privileged and remained privileged after
25 disclosure during the marketing meeting.  Accordingly, Apple's first contention that the document
26 at issue does not contain privileged information should be rejected.

27
28

## II. PODFITNESS' COUNSEL ACTED PROMPTLY, PURSUANT TO THE TERMS OF THE STIPULATED PROTECTIVE ORDER, AFTER DISCOVERY OF THE INADVERTENT PRODUCTION

Apple's second contention that Podfitness failed to act promptly to seek the return of the privileged document should also be rejected.

### A. Facts

On April 5, 2007 Apple filed a confidential submission, which contained a reference to information contained in document PF001014. Shortly after receiving Apple's submission, which brought the document to the attention of Podfitness' counsel, Podfitness' counsel launched an investigation of the source and nature of the information contained in PF001014. After discovering facts sufficient to conclude that the document bearing control number PF001014 was privileged (e.g. the source of the legal advice was Podfitness' legal counsel and was given to Podfitness in the course of legal representation in a confidential setting), Podfitness' counsel on May 2, 2007, wrote to Apple's counsel informing them of the mistaken production of information protected under the attorney-client privilege and requesting that document PF001014 be returned and replaced with a redacted version, under the terms set forth by paragraph twelve (12) of the Stipulated Protection Order.

### B. Argument

The Stipulated protective Order provides:

> If documents or information that are subject to a claim of privilege or the attorney work product doctrine are produced or disclosed in this action through inadvertence, mistake or other error, such documents and information may later be designated "ATTORNEY CLIENT PRIVILEGED" or "ATTORNEY WORK PRODUCT" *if such designation is made promptly* upon discovery by the disclosing / producing party of the mistaken disclosure or production. In the event such designation is made, no waiver of the privilege or the attorney work product doctrine shall be deemed to have occurred. Upon such designation, the receiving attorney shall promptly make best efforts to collect all copies of the documents and information in question and return such information and documents to the producing party.

(February 9, 2007, Stipulated Protective Order, ¶ 12, emphasis added.)

Apple has asserted that Podfitness did not act promptly in designating the document as confidential and requested the un-redacted version be returned. This argument, however, lacks merit under the circumstances. After Apple attached the document PF001014 to a confidential

submission, and Podfitness' counsel became aware of the document, rather than jumping to conclusions and immediately demanding return of the document, Podfitness' counsel began its factual investigation to determine whether the document did indeed contain privileged information. In order to determine this issue, Podfitness was required to among other things, determine the source of the legal information, i.e., whether it came from an attorney or some other source such as a website or other non-attorney source. This factual investigation took some time, because the communication occurred about two years ago. Nearly immediately after determining that the source of the information was indeed a Workman Nydegger attorney, Richard Gilmore, and that the information was legal advice given during the course of representation in a confidential setting, Podfitness' counsel sent the letter to Apple's counsel requesting return of the document.

In total, less than a month transpired between the time Podfitness' counsel discovered the existence of the document, conducted its factual investigation to determine the existence of the privilege, and designate the document as privileged, and request replacement of the document with a redacted version (from April 5, 2007 until May 2, 2007). This was certainly a reasonable amount of time in light of the need to gather the factual information surrounding the circumstances of the legal advice. Consequently, Podfitness acted "promptly" under the terms of the Stipulated Protective Order in seeking return of the privileged document at issue.

Again, on this point, Apple cites case law that is not relevant to the present dispute. For example, Apple cites *Bud Antle, Inc. v. Grow-Tech*, 131 F.R.D. 179, 182 (N.D. Cal. 1990) for support of its position that Podfitness did not act "promptly" to seek return of the document under the terms of paragraph 12 of the Stipulated Protective Order. In *Bud Antle*, however, there was apparently not even a stipulated protective order in place but rather that case was decided under a common law waiver analysis. The same is true of *Harmony Gold U.S.A. v. FASA Corp.*, 169 F.R.D. 113, 117 (D. Ill. 1996), which did not appear to involve interpretation of a stipulated protective order, but was decided under a common-law analysis of waiver.

The Stipulated Protective Order in the present case specifically addresses the issue of waiver by erroneous production. That order must mean something; it cannot be simply ignored in

1  favor of a common-law analysis of waiver as Apple would have the Court do. In fact, the
2  Stipulated Protective Order was drafted and proposed by Apple. At least part of the reason for
3  such was to avoid waiver of privilege in cases of erroneous production such as the present case, in
4  recognition that such errors frequently occur when numerous documents are produced. Apple
5  proposed the terms of the Stipulated Protective Order, Podfitness agreed to those terms, and the
6  Court entered it as an order. Apple cannot ignore that order now that it does not favor its position.

7  Moreover, in *Bud Antle* part of the ground for the court's holding was the produced letter
8  in that case "[t]he Letter was thoroughly disclosed to defendants in good faith by Mr. Anderson at
9  a time he was under no awareness that at some future date the document would be declared
10 privileged." Conversely, in the present case, the erroneously produced document was designated
11 "Attorneys' Eyes Only" under the terms of the stipulated Protective Order. Podfitness' counsel
12 presumes that Apple's counsel has complied with the terms of the Stipulated Protective Order and
13 has not disclosed the document at issue or its content to their client.

14 Consequently, based on the foregoing, the Court should require Apple to comply with the
15 terms of the Stipulated Protective Order and return the original version of PF001014 and replace it
16 with the redacted version.

### III.  RESPONSE TO APPLE'S CONTENTIONS

18 Apple seems to focus more on the "prejudice" it claims it would suffer by the return of the
19 document rather than any legal ground for refusing its return. First, it is not "prejudice" for Apple
20 to be required to return a document that it was never entitled to have. Second, in order to support
21 its legal position, Apple takes out of context the substance of the document and the alleged
22 prejudice it will suffer if the document is returned.[4] The issue of waiver prevents Podfitness from
23 disclosing the true substance of the legal advice at this time. Podfitness, however, is prepared to
24 present the substance of such advice *in camera* in the event the Court deems it helpful in deciding
25 this issue.

---

[4] Indeed, Apple attempts to argue the merits of its claims in this submission, which arguments are not relevant to the issue before the Court of whether the document at issue is privileged.

### IV. PODFITNESS' OFFER OF COMPROMISE

Podfitness believes that the entire second paragraph of the document bearing control number PF001014 is privileged. This paragraph provides:

> **REDACTED – [FILED UNDER SEAL]**

Podfitness believes that all of this paragraph is privileged and should be redacted because the entirety of the paragraph follows and relates to the legal advice given and received by Podfitness. For example, the first sentence is a lead-in to the legal advice given, and the third sentence sets forth anticipated action, based upon the legal advice. Podfitness, however, as an offer of compromise, would be willing to agree to only having the second sentence redacted: **REDACTED – [FILED UNDER SEAL]** allowing the remaining sentences to remain un-redacted, provided that no waiver of the privilege would be deemed to have occurred.

### V. CONCLUSION

Based on the foregoing, Podfitness respectfully requests, pursuant to the terms of the Stipulated Protective Order, that the Court order the document bearing control number PF001014 returned to Podfitness and all copies thereof destroyed, to be replaced with a redacted version of the document, redacting all privileged information.

## APPLE'S POSITION[5]

### I. INTRODUCTION

At issue in this particular discovery dispute is Apple's allegation that the PODFITNESS.COM & Earbud Logo used by Defendant is confusingly similar to Apple's claimed white earbuds trade dress ("Earbud Trade Dress"). Defendant's PODFITNESS.COM & Earbud Logo is shown below on the left, and Apple's Earbud Trade Dress is depicted on the right.

---

[5] This section contains Apple's position with respect to this discovery dispute. Podfitness does not stipulate to or admit any assertions contained within this section.



In Defendant's Answer to Apple's Complaint, filed on November 13, 2006, Defendant disputed Apple's claim of ownership of trade dress rights in the ear buds that are sold with and used in the marketing of Apple's IPOD products.

On February 5, 2007, Defendant produced its first round of documents responsive to Apple's discovery requests. Among the documents produced was document number PF001014, which represents a copy of notes taken at a marketing meeting for Defendant dated November 29, 2005. The notes set forth as follows:

> **REDACTED – [FILED UNDER SEAL]**

Apple cited to the above document in its mediation brief, which was served on Defendant on April 5, 2007. Apple also attached the document as an exhibit to the brief. As set forth in Defendant's statement of facts, Defendant's counsel did not object to the content of PF001014 until May 2, 2007, some three months after the production of the document at issue, and approximately a month after Apple's conspicuous use of the document in its mediation papers. Throughout this time, Apple's counsel extensively relied upon the evidence in question to formulate its legal strategy, and to advise its client accordingly.

1   On May 31, 2007, the in-person meet and confer took place at the Redwood City office of
2   Apple's counsel. The meeting was attended by David Miclean (personally) and Andrew Abrams
3   (telephonically) of Fish & Richardson PC, representing Apple, and Brett Johnson of Workman
4   Nydegger, representing Defendant. The parties were unable to reach an acceptable resolution to
5   the discovery dispute.

6   **II.    ARGUMENT**

7   **A.    Defendant Has Not Provided Any Substantiation For Its Claim Of Privilege**
8

9   Apple contests Defendant's attempt to suppress the evidence in question on several
10  grounds. Primarily, Apple has not received appropriate substantiation for Defendant's claim that
11  the "information" regarding the ear buds came from a confidential attorney communication. The
12  law provides that the party asserting the attorney-client privilege bears the burden of
13  demonstrating the existence of the privilege. *See Clarke v. American Commerce Nat'l Bank*, 974
14  F.2d 127, 129 (9th Cir. 1992); *QST Energy, Inc. v. Mervyn's*, 2001 WL 777489 at *2 (N.D. Cal.
15  May 14, 2001), *citing National Steel Prods. Co. v. Superior Court*, 164 Cal.App.3d 476, 483
16  (1985). Defendant alleged in an email dated June 6, 2007 that the source of the information was
17  Richard Gilmore of Workman Nydegger. However, there is nothing referring to Mr. Gilmore in
18  the document itself, and Defendant has not disclosed further details regarding the communication,
19  including when the communication occurred and the context in which the alleged communication
20  was made. Further, Defendant has failed to provide Apple with a privilege log in connection with
21  any of its produced documents.

22  **B.    Any Privilege Which May Have Existed Has Been Waived**

23  Apple believes that any claim of privilege would be deemed waived by Defendant due to
24  the presence of a third party at the November 29, 2005 marketing meeting. The law of the 9th
25  Circuit is clear that the voluntary disclosure of a privileged attorney-client communication to a
26  third party waives such a privilege. *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990).
27  The presence of third parties at a corporate meeting in which legal advice from counsel is relayed
28  destroys any privilege that would have attached to such communications. *See New Orleans*

1  *Saints v. Griesedieck*, 612 F. Supp. 59, 63, 20 Fed. R. Evid. Serv. 152 (E.D. La. 1985*), judgment
2  aff'd*, 790 F.2d 1249 (5th Cir. 1986) (presence of third parties at partnership meeting waived
3  privilege that would have attached to the minutes of the meeting with counsel); *Costal States
4  Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (the test of whether the
5  circulation of an otherwise privileged communication to others within an agency waives the
6  privilege is whether the agency is able to demonstrate that the documents, and therefore the
7  confidential information contained therein, were circulated no further than among those members
8  who are authorized to speak or act for the organization in relation to the subject matter of the
9  communication.).

10  Apple and Defendant have both confirmed that the "Dave" referenced in the notes is
11  Dave Malone, who at the time of the meeting served as the Creative Director of Power Music,
12  Inc. ("Power Music"). It is apparent from Apple's research as well as from the face of the
13  document itself that Mr. Malone served on behalf of Power Music as an independent marketing
14  consultant to Defendant. According to document number PF001014,
15  
16  **REDACTED – [FILED UNDER SEAL]**
17  
18  
19  .

20  Apple disputes that Mr. Malone was an employee of Defendant at the time of the
21  November 29, 2005 marketing meeting. In response to Apple's request for further information
22  regarding the respective identities and positions of the individuals present at the marketing
23  meeting, Defendant vaguely alleges that Mr. Malone was a "shared employee of Power Music
24  and Podfitness." Defendant also makes the curiously ambiguous statement that "[a]ny expenses
25  paid by Power Music with respect to Mr. Malone's employment were credited to Power Music's
26  equity in Podfitness." (*See* p. 4, fn. 3.) Why not simply say that Defendant employed Mr.
27  Malone at the time of the meeting, or otherwise provide further substantiation for this supposed
28  "shared" arrangement? It is because such a claim would be flatly inaccurate. While Defendant's

1  claims are intentionally vague, the evidence that Apple has reviewed contradicts Defendant's
2  position.  For example, a resume of Dave Malone indicates that he was employed by Power
3  Music as its Creative Director from February 2005 to May 2006, and that he worked for
4  Defendant during the months of August 2006 and September 2006, well after the marketing
5  meeting in question.

6        Defendant then misstates the "common interest" doctrine, in a desperate attempt to shoe-
7  horn Mr. Malone into the scope of the attorney-client privilege.  In *Burroughs v. DeNardi*, 167
8  F.R.D. 680, 685 (S.D.Cal. 1996), the court stated that the common interest privilege, otherwise
9  known as the "joint defense" privilege, applies when (1) the communications were made in the
10 course of a joint defense (or prosecution); (2) statements were designed to further a joint defense
11 or prosecution effort; and (3) the privilege has not been waived.  *See also Baden Sports, Inc. v.*
12 *Kabushiki Kaisha Molten*, 2007 WL 1185680, *1 (W.D.Wash. 2007).  The "interest" in common
13 must thus represent a shared <u>legal</u> interest akin to that "shared by allied lawyers and clients who
14 are working together in prosecuting or defending a lawsuit or in certain other legal
15 transactions...." *Baden Sports, Inc.*, , 2007 WL at *1, *quoting United States v. Bergonzi*, 216
16 F.R.D. 487, 495 (N.D.Cal. 2003).  A mere desire for common goals, such as the success of a
17 company, is not sufficient.  In *Baden Sports, Inc.*, the documents in question related to a legal
18 opinion drafted by the attorney for the Federation Internationale de Basketball ("FIBA") at the
19 behest of the Secretary General of FIBA.  Defendants argued that they shared a common interest
20 with FIBA in evaluating legal issues related to the new ball design and the sponsorship
21 agreement between them.  However, the court denied the privilege claim by stating that
22 Defendants did not provide any declaration or evidence from the General Manager of Defendant
23 indicating that he initiated the inquiry.  Moreover, the evidence did not suggest that Defendant
24 provided materials to the FIBA attorney to assist him in preparing the legal opinion.  Because
25 Defendants bore the burden of establishing the attorney-client privilege, the Court declined to
26 apply the common interest or joint defense privilege.  *Id.*, at *1-2.

27       Here, similarly, Defendant has not met the standard for the application of the joint
28 defense privilege, as it has not set forth any facts demonstrating that Mr. Malone actively

1  participated in requesting or formulating the alleged legal opinion.  In fact, the available

2  evidence suggests that he was merely a marketing consultant who was retained by Defendant to

3  design its logo, among other things.  Defendant has also failed to make "a detailed factual

4  showing" required to show that a third party is a representative of the client, or functionally

5  equivalent to the corporation's employee, thus including that third party within the protection of

6  the attorney-client privilege.  *See Memry Corp. v. Kentucky Oil Technology, N.V.*, 2007 WL

7  39373, *2 (N.D. Cal. 2007).  Accordingly, it is Apple's position that any legal information which

8  was disclosed to Mr. Malone should be considered information which is not subject to a claim of

9  attorney-client privilege[6].

### C. Defendant's Objections Were Not Made Promptly

It is Apple's position that Defendant's attempt to suppress the : **REDACTED – [FILED UNDER SEAL]** was not "prompt," according to the guidelines set forth in the Protective Order.  This Court has previously held that parties waive privilege of inadvertently disclosed documents when they fail to promptly address these inadvertent disclosures.  See *Bud Antle, Inc. v. Grow-Tech, Inc.*, 131 F.R.D. 179, 183 (N.D. Cal. 1990).  In *Bud Antle*, this Court found that the plaintiff waived privilege when it did not discover the inadvertent disclosure of privileged documents until six weeks after the disclosure was made (not discovered.)  *Id*. at 183.  In so holding, the Court noted: "Defendants have analyzed the Letter, have possibly disclosed it to experts, and have indicated a strong reliance on it for purposes of their defense in this lawsuit.  Under the circumstances, the bell has already been rung, and the court cannot now unring it by denying defendants access to the Letter."  *Id*. at 183-84.  Therefore, the court ruled that the plaintiff waived privilege.  *Id*.

Further, it has been held that a delay of even two weeks after discovery of an inadvertent disclosure will not satisfy a requirement of promptly addressing such disclosures.  *See Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996).  In *Harmony Gold*, the

---

[6] Defendant assured Apple in writing that it would produce all responsive discovery documents pertaining to its third party affiliates by April 30, 2007.  Notwithstanding this promise, Apple still has not received information detailing the relationship between Defendant and Power Music.  On May 29, 2007, and again at the meet and

defendants referenced the disclosed documents in a motion and the plaintiff waited two weeks before contesting the use of the inadvertently disclosed documents. *Id*. at 115. In rejecting the plaintiff's argument that they required two weeks before objecting to the use of the documents in order to determine how the disclosure occurred, the court noted that their "attempt to rectify the error was lax at best." *Id.* at 117.

Defendant produced the document in question to Apple on February 5, 2007 as part of a production of only 1317 pages, all of which were ostensibly reviewed for confidentiality and privilege by Defendant's counsel. Subsequently, Apple not only cited to the document on numerous occasions in its mediation brief, which was served on Defendant on April 5, 2007, but attached the document as an exhibit to the brief. It was not until May 2, 2007, some three months after the production of the document at issue, and approximately a month after Apple's conspicuous use of the document in its mediation papers, that Defendant's first raised the issue of attorney-client privilege in connection with document number PF001014. Throughout this time, Apple's counsel has extensively relied upon the evidence in question to formulate its legal strategy, and it has performed discovery, negotiated mediation, and advised Apple on the merits of the case accordingly. Consequently, Apple has been unduly prejudiced by Defendant's delay in bringing this issue to its attention. Contrary to Defendant's claim that "prejudice" is not a legitimate legal ground, cases such *Bud Antle* hold that fairness and/or prejudice are significant factors to be considered in making a decision as to the return of an inadvertently disclosed document. 131 F.R.D. at 183-84 (stating that fairness dictates that a claim of privilege should be waived when six weeks have passed since the inadvertent disclosure, and the other party has relied on the document in forming their defense.)

### D. Defendant's Proposed Redaction Is Overbroad

Lastly, even if Defendant is permitted to suppress the evidence in question, Apple strongly objects to the scope of the proposed redaction. Defendant seeks to redact far more than the alleged REDACTED – [FILED UNDER SEAL] referred to in document number PF001014. Defendant

---

confer, Apple repeated its request for such documents. Defendant's prompt production of documents relating to Power Music may add further insight to this issue.

1  also seeks to remove several other sentences which describe the company's actions in regards to
2  creating its corporate logo[7].  Such a reference is clearly not privileged, regardless of how the
3  initial information is characterized.  Defendant may not suppress damaging evidence regarding
4  **REDACTED – [FILED UNDER SEAL]** under the pretext that **REDACTED –**
5  **[FILED UNDER SEAL]**.  Such
6  evidence is no more "privileged" than any summary of the numerous other infringing actions
7  Defendant has engaged in, such as the prominent use of Apple's trademarks in paid search
8  engine keywords and Internet metatags.  The fact that Defendant's counsel may perhaps have
9  previously **REDACTED – [FILED UNDER SEAL]** does not by itself
10 preclude evidence of **REDACTED – [FILED UNDER SEAL]**
11 Naturally, Defendant would like to erase from the record the evidence that it **REDACTED –**
12 **[FILED UNDER SEAL]** However, Defendant should not
13 be able to stretch the credible boundaries of the attorney-client privilege rules in order to white-
14 wash its wrongful acts.

### III.  APPLE'S OFFER OF COMPROMISE

It is Apple's position that document number PF001014 should be permitted to remain in its current form, without any redaction whatsoever.  However, if the Court is inclined to examine the possibility of redacting the document, Apple respectfully requests the opportunity to conduct a deposition of Mr. Malone and/or Teri Sundh prior to any formal decision.  Apple believes that in view of the disagreements regarding the nature and context of the alleged legal communication, as well as the respective positions of the individuals present at the marketing meeting, such depositions will be necessary to obtain all of the facts relevant to this dispute.

Further, even if Defendant is permitted to suppress the evidence in question, Apple requests that the redaction be limited to the sentence pertaining to the alleged **REDACTED – [FILED UNDER SEAL]** allowing the remaining sentences to remain, un-redacted.

### IV.  CONCLUSION

---

[7] **REDACTED – [FILED UNDER SEAL]**

1    In view of the foregoing, Apple respectfully requests that the Court treat document
2  number PF001014 as not subject to paragraph 12 of the Stipulated Protective Order.
3    Pursuant to the Notice of Reference and Order re Discovery Procedures issued by this
4  Court on February 26, 2007, the parties have jointly submitted this Meet and Confer Pursuant to
5  the Notice of Reference and Order re Discovery Procedures issued by this Court on February 26,
6  2007, the parties have jointly submitted this Meet and Confer Letter outlining the relevant issues
7  that remain in dispute.  The parties respectfully request that the Court determine what future
8  proceedings, if any, are necessary in order to reach a resolution of the issues discussed herein.

10  Dated: June 8, 2007                    FISH & RICHARDSON P.C.

12                                         By: /s/ David J. Miclean
                                               David J. Miclean
13                                             Lisa M. Martens
                                               Andrew M. Abrams
14
15                                         Attorneys for Plaintiff
                                           APPLE COMPUTER, INC.
16
17  Dated: June 8, 2007                    WORKMAN NYDEGGER

19                                         By: /s/ Brett I. Johnson
                                               Charles J. Veverka
20                                             Robert A. Aycock
                                               Brett I. Johnson
21
22                                         Attorneys for Defendant
                                           PODFITNESS, INC.

**DECLARATION OF CONSENT**

Pursuant to General Order No. 45, Section X(B) regarding signatures, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Brett I. Johnson.

Dated: June 8, 2007               FISH & RICHARDSON P.C.

                                  By: /s/ David J. Miclean
                                      David J. Miclean
                                      Attorneys for Plaintiff
                                      APPLE COMPUTER, INC.

10744301.doc