David J. Miclean (#115098/miclean@fr.com)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Lisa M. Martens (#195824/martens@fr.com)
Andrew M. Abrams (#229698/abrams@fr.com)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
(OAKLAND DIVISION)

| | |
|---|---|
| APPLE INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>PODFITNESS, INC., and DOES 1-100, inclusive,<br><br>        Defendants. | Case No. C 06-5805 SBA<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. Trademark Infringement - 15 U.S.C. § 1114(1)<br>2. Trademark Infringement, Unfair Competition, and False Designation of Origin - 15 U.S.C. § 1125(a)<br>3. Trade Dress Infringement - 15 U.S.C. § 1125(a)<br>4. Trademark Dilution - 15 U.S.C. § 1125(c)<br>5. Trademark Infringement - Cal. Bus. & Prof. Code § 14335 *et seq.*<br>6. Trademark Dilution - Cal. Bus. & Prof. Code § 14330<br>7. Unfair Competition - Cal. Bus. & Prof. Code §§ 17200 *et seq.*<br>8. Untrue and Misleading Advertising - Cal. Bus. & Prof. Code §§ 17500 and 17535<br>9. Breach of Contract<br>10. Cybersquatting - 15 U.S.C. § 1125(d)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff APPLE INC. hereby states and alleges as follows:

**NATURE OF THE ACTION**

1.      This action seeks permanent injunctive relief and damages against Defendant's willful infringement and dilution of Plaintiff's famous trademark **IPOD**, under the Lanham Trademark Act of 1946, as amended, Title 15, United States Code, § 1051 et seq. (the "Lanham Act"),  and for infringement, dilution and unfair competition under California Business & Professions Code §§14330, 14335, 17200, 17500 and 17535.  This action also seeks permanent injunctive relief and damages for breach of contract and for cybersquatting in violation of the Lanham Act.

2.      APPLE INC. ("Apple") is a corporation organized under the laws of California, with a business address at 1 Infinite Loop, Cupertino, California, 95014.  Apple is one of the world's leading computer technology companies and the creator of the enormously successful portable handheld media player offered and sold under the trademark **IPOD**.  Apple's worldwide annual sales in 2006 were US$19.3 billion.  Apple sold approximately 7,676,000 **IPOD** players in 2006.

3.      On information and belief, defendant PODFITNESS, INC. ("Defendant") is a corporation organized under the laws of Nevada, with a business address at 235 West Sego Lily Drive, 2nd Floor Sandy, Utah 84070.

4.      On information and belief, Defendant is in the business of offering goods and services that involve the use of Apple's ITUNES proprietary digital media player application to create customized digital audio files.  Such files, which feature music and instructional advice from professional fitness trainers, are designed to be played on the consumer's portable media player, particularly the **IPOD** player, to facilitate his or her exercise routine.  Defendant promotes its products and services on the Internet at *http://www.podfitness.com* under the trade name PODFITNESS.COM and uses the trademark and service mark PODFITNESS, and other similar POD-formative marks, detailed below,  in connection with its goods and services.  Defendant's trade name and marks are highly similar to and confusingly similar to Apple's famous trademarks as they are used in the marketplace, and Defendant has intentionally sought to imply an

1  association with Apple in its marketing and advertising.  Unless Defendant is enjoined from

2  continuing to use marks confusingly similar to Apple's famous **IPOD** mark, and any other

3  confusing signs or indicia, to promote its goods and services, the **IPOD** mark will continue to be

4  infringed and diluted, thereby destroying the distinctive quality that Apple has developed over the

5  years, to the detriment of Apple and the public.

6  <u>**JURISDICTION AND VENUE**</u>

7  5.  This is a civil action arising under the Lanham Act, Title 15, United States Code,

8  §§1114, 1125(a), (c) and (d)  *et seq.* and under the common and statutory laws of California.  This

9  Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction),§

10  1338 (trademark and unfair competition), and § 1367 (supplemental jurisdiction).

11  6.  Personal jurisdiction over the defendant is vested and venue is proper pursuant to

12  28 U.S.C. § 1391 in the United States District Court for the Northern District of California

13  because a substantial part of the events giving rise to the claims herein occurred in this District,

14  and Defendant owns and operates an interactive website that displays and promotes the infringing

15  marks and attempts to establish communication on-line with parties who are interested in

16  Defendant's goods and services, including parties in this District.  On information and belief,

17  Defendant solicits and has done business using Apple's marks, or marks infringing Apple's marks

18  in this State with customers located within this State and in this District and thereby purposefully

19  availed itself of the privilege of doing business in this State and in this District.  The claims

20  alleged herein arise out of or are related to the defendant's forum-related activities and the

21  exercise of jurisdiction herein is otherwise reasonable.  Personal jurisdiction is also proper over

22  the Defendant in that the intentional and wrongful conduct described herein was directed at this

23  District and at Apple, whom Defendant knew to be a resident of this District, and who is a resident

24  of this State, and who suffered damage in this District as a result of Defendant's intentional

25  conduct.

26  7.  Venue is proper in the United States District Court for the Northern District of

27  California pursuant to 28 U.S.C. §§1391(b) and (c) as the claims arise in this District and

28  Defendant, a corporation, is subject to personal jurisdiction in this District.

FIRST AMENDED COMPLAINT
Case No. C 06-5805 SBA

**BACKGROUND**

**Apple's Valuable Trademark Rights**

8.      In addition to its position as one of the world's most successful and innovative computer technology companies, Apple has spearheaded the digital music revolution through its **IPOD** portable handheld media players and its ITUNES on-line music store.

9.      Since its introduction on October 23, 2001, the **IPOD** player has become an extremely popular and widely recognized consumer product, with over 50 million units sold worldwide.  The **IPOD** player has led digital media player sales in the U.S. for the past several years, garnering tremendous commercial success.

10.     In the past five years, the **IPOD** player has truly become a cultural phenomenon.  As stated by Andy Serwer in a Fortune magazine article dated June 27, 2005, "[i]t's hard to recall any branded recreational product that ever carried the cultural oomph that the iPod now has."  Steven Levy, author of *The Perfect Thing*: *How the iPod Shuffles Commerce, Culture and Coolness* calls the IPOD "the most familiar, and certainly the most desirable, new object of the twenty-first century.  You could even make the case that it *is* the twenty-first century."  Leander Kahney adds in *The Cult of iPod*, "Fire, the wheel, and the iPod.  In the history of invention, gadgets don't come more iconic than Apple's digital music player.  The iPod is to the 21st century what the big band was to the '20s, the radio to the '40s, or the jukebox to the '50s - the signature technology that defines the musical culture of the era."  As an example of the **IPOD** player's reach, starting in the fall of 2004, Duke University initiated a program in which all incoming freshman were provided **IPOD** players, free of charge, to use as high-tech educational tools to record lectures, capture scientific data and play language-training recordings.

11.     On information and belief, consumers and industry publications have adopted and have used in the marketplace the term "POD" as slang for the mark **IPOD**, to refer to Apple's **IPOD** player.

12.     The **IPOD** player is comprised of a portable and handheld digital electronic device and integrated software for recording, organizing, transmitting, manipulating, and reviewing text, audio and video files.  The **IPOD** player is promoted and sold for a variety of uses,

including entertainment, education, and exercise.

13.     Every **IPOD** player is packaged with Apple's stylized and unique white earphones, commonly called earbuds. Apple's distinctive earbuds consist of white circular ear speakers with a gray rim, which are attached to a white cylinder of molded plastic covering the white wire. Apple's earbuds have been prominently displayed in its advertising for the **IPOD** player, and, most famously, are featured in Apple's popular silhouette advertising campaigns. As a result of this well-known advertising campaign and the success of the **IPOD** products, the distinctive white earbuds have become associated with Apple and its **IPOD** players. Such earbuds shall be referred to hereafter as the "Earbud Trade Dress."

14.     Since their introduction in October 2001, Apple has continuously and extensively promoted, offered and sold its **IPOD** players, and related goods and services, in interstate commerce under the **IPOD** mark. The **IPOD** players are available in retail stores and on-line at various websites, including The Apple Store at the URL *http://store.apple.com.*

15.     On October 18, 2001, Apple filed United States Trademark Application Serial No. 78/089,144 for the **IPOD** mark. On May 9, 2006, the United States Patent and Trademark Office issued Registration No. 3,089,360 to Apple for **IPOD** for "portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, and audio files; computer software for use in organizing, transmitting, manipulating, and reviewing text, data, and audio files on portable and handheld digital electronic device." A true and correct copy of the USPTO online record for Registration No. 3,089,360 is attached hereto as Exhibit A.

16.     On October 18, 2001, Apple filed United States Trademark Application Serial No. 75/982,871 for **IPOD**. On April 27, 2004, the United States Patent and Trademark Office issued Registration No. 2,835,698 to Apple for **IPOD** for "portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing audio files; computer software for use in organizing, transmitting, manipulating, and reviewing audio files on portable and handheld digital electronic devices." A true and correct copy of the USPTO online record for Registration No. 2,835,698 is attached hereto as Exhibit B.

17.     On March 29, 2005, Joseph N. Grasso assigned the entire interest in Registration

No. 2,781,793 to Apple for **IPOD** for "public Internet kiosk enclosure containing computer hardware." A true and correct copy of the USPTO online record for Registration No. 2,781,793 is attached hereto as Exhibit C.

18.     On November 23, 2004, Apple filed United States Trademark Application Serial No. 78/521,891 for **IPOD** for "printed materials and publications, namely, books, magazines, newsletters, brochures, booklets, pamphlets, manuals, journals, leaflets, greeting cards, and catalogues all relating to computer software, computer hardware, consumer electronics, digital technology, telecommunications, on-line retailing, entertainment, music, movies and video, and multimedia apparatus and instruments; pens and pencils, clipboards, posters, memo pads, binders." This application is based on Application No. 3957768 for **IPOD** in the European Union, and received a priority filing date of July 28, 2004, under Section 44(d) of the Lanham Act. A true and correct copy of the USPTO online record for this application is attached hereto as Exhibit D.

19.     On December 14, 2004, Apple filed United States Trademark Application Serial No. 78/532,252 for **IPOD** for "Educational services in the nature of classes and training services offered in-person and over computer networks in the fields of K-12 education, university-level subjects, topics of general interest, and computer hardware and software applications; entertainment services in the nature of musical, video, audio-video, and textual materials, namely books, plays, pamphlets, brochures, newsletters, journals, and magazines, on the subjects of sporting and cultural activities and a wide range of topics of general interest offered in-person and distributed over computer networks; providing electronic publications for browsing and downloading over computer networks, namely books, pamphlets, brochures, newsletters, journals, and magazines, on the subjects of computer hardware and software applications and a wide range of topics of general interest; editing of audio-tapes; editing of video-tapes; editing of written text; editing of photographic images; videotape editing; digital imaging services; providing information, advice and consultation services relating to all the aforesaid." This application is based on Application No. 3957768 for **IPOD** in the European Union, and received a priority filing date of July 28, 2004, under Section 44(d) of the Lanham Act. A true and correct copy of the USPTO online record for this application is attached hereto as Exhibit E.

6

20.     On December 21, 2005, Apple filed United States Trademark Application Serial No. 78/778,627 for **IPOD NANO**.  On January 2, 2007, the United States Patent and Trademark Office issued Registration No. 3,192,683 to Apple for **IPOD NANO** for "portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, and audio files; computer software for use in organizing, transmitting, manipulating, and reviewing text, data, and audio files on portable and handheld digital electronic devices."  A true and correct copy of the USPTO online record for Registration No. 3,192,683 is attached hereto as Exhibit F.

21.     On June 18, 2005, Apple filed United States Trademark Application Serial No. 78/653,661 for **IPOD** for "a full line of electronic and mechanical accessories for portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, audio and video files; electronic docking stations; stands specially designed for holding portable and handheld digital electronic devices; battery chargers; battery packs; electrical connectors, wires, cables, and adaptors; wired and wireless remote controls for portable and handheld digital electronic devices; headphones and earphones; stereo amplifier and speaker base stations; automobile stereo adapters; audio recorders; radio receivers; radio transmitters; image scanners; video viewers, namely video monitors for portable and handheld digital electronic devices; and, electronic memory card readers; a full line of computer software for portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, audio, image, and video files; computer application software for recording and organizing calendars and schedules, to-do lists, and contact information; computer game software; and, computer software for clock and alarm clock functionality; carrying cases, sacks, and bags, all for use with portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, audio, image, and video files."  A true and correct copy of the USPTO online record for this application is attached hereto as Exhibit G.

22.     On August 10, 2005, Apple filed United States Trademark Application Serial No. 78/689,534 for **MADE FOR IPOD & Design** for "a full line of electronic and mechanical

accessories for portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, audio and video files; electronic docking stations; stands specially designed for holding portable and handheld digital electronic devices; battery chargers; battery packs; electrical connectors, wires, cables, and adaptors; wired and wireless remote controls for portable and handheld digital electronic devices; headphones and earphones; stereo amplifier and speaker base stations; automobile stereo adapters; audio recorders; radio receivers; radio transmitters; image scanners; video viewers, namely video monitors for portable and handheld digital electronic devices; and, electronic memory card readers; a full line of computer software for portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, audio, image, and video files; computer application software for recording and organizing calendars and schedules, to-do lists, and contact information; computer game software; and, computer software for clock and alarm clock functionality; carrying cases, sacks, and bags, all for use with portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, audio, image, and video files." A true and correct copy of the USPTO online record for this application is attached hereto as Exhibit H.

23.    On April 11, 2005, Apple filed United States Trademark Application Serial No. 78/606,357 for **IPOD SOCKS**.  On March 27, 2007, the United States Patent and Trademark Office issued Registration No. 3,221,419 to Apple for **IPOD SOCKS** for "Cases and bags specifically adapted for carrying computers and consumer electronics, namely, portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, audio and video files." A true and correct copy of the USPTO online record for Registration No. 3,221,419 is attached hereto as Exhibit I.

24.    On March 9, 2006, Apple filed United States Trademark Application Serial No. 78/833,929 for **IPOD HI-FI** for "speakers; sound systems comprising remote controls, amplifiers, loudspeakers and components thereof; apparatus for reproduction of sound; apparatus for connecting and charging portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing audio, video and other digital content; parts

and fittings for all the aforesaid goods." This application is based on Application No. 300497133 for **IPOD HI-FI** in Hong Kong, and received a priority filing date of September 20, 2005, under Section 44(d) of the Lanham Act. A true and correct copy of the USPTO online record for this application is attached hereto as Exhibit J.

25. On June 18, 2005, Apple filed United States Trademark Application Serial No. 78/653,667 for **IPOD** for "full line of holders, straps, armbands, and clips for portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, audio, image, and video files; lanyards for portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, audio, image, and video files." A true and correct copy of the USPTO online record for this application is attached hereto as Exhibit K.

26. On June 18, 2005, Apple filed United States Trademark Application Serial No. 78/653,669 for **IPOD** for "full line of clothing, footwear, and headwear." A true and correct copy of the USPTO online record for this application is attached hereto as Exhibit L.

27. On November 23, 2004, Apple filed United States Trademark Application Serial No. 78/521,796 for **IPOD** for "Retail store services and retail store services provided via communications networks featuring computers, computer software, computer peripherals and consumer electronics, and pre-recorded music, audio-visual and music-related products; product demonstrations provided in-store and via communications networks; information and consultation in connection with all of the foregoing; computerized data storage and retrieval services for digital music, photographs, and audio-visual and text works; information and consultation in connection therewith." This application is based on Application No. 3957768 for IPOD in the European Union, and received a priority filing date of July 28, 2004, under Section 44(d) of the Lanham Act. A true and correct copy of the USPTO online record for this application is attached hereto as Exhibit M.

28. On July 29, 2004, Apple filed United States Trademark Application Serial No. 78/459,101 for the **POD** mark for "portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing audio files, and peripherals for use

therewith; computer software for use in organizing, transmitting, manipulating, and reviewing audio files on portable and handheld digital electronic devices."  This application is based on Section 44(e) of the Lanham Act, and claims a priority filing date of January 30, 2004 in reliance on Registration No. 3634623 for **POD** in the European Union.  A true and correct copy of the USPTO online record for this application is attached hereto as Exhibit N.

29.    Apple has used and is using its **IPOD** mark in commerce on and in connection with offering and selling its portable handheld media players and associated goods and services continuously since October 2001.  On information and belief, the POD mark has been used by consumers and industry publications as a slang term for the **IPOD** mark and product.

30.    On information and belief, since its introduction in 2001, consumers have used Apple's **IPOD** products in connection with their fitness activities.  As a result, for several years, Apple has marketed and sold **IPOD**-compatible protective "sports cases" and arm bands to facilitate the use of the **IPOD** player while exercising.  Apple markets such accessories at The Apple Store (at *http://store.apple.com*) under the slogan, "[k]eep you IPOD secure when you're on the go.  Perfect for riding, running, and working out."

31.    In May 2006 Apple announced that it had entered into a collaboration with shoe manufacturer Nike to release a new product, referred to as Nike **+IPOD**, that would allow a runner's shoes to communicate with an **IPOD** player.  The Nike **+ IPOD** Sports Kit component of the product is designed to allow an **IPOD** player to function as a personal trainer or coach, and to help the user achieve individualized fitness goals.  The Nike **+IPOD** product is being promoted by Apple and Nike in advertisements, some of which feature Apple's distinctive Earbud Trade Dress next to a running shoe, and is now available in retail stores and on-line at various websites, including The Apple Store at the URL *http://store.apple.com*.  Apple's ITUNES Store also features numerous downloadable podcasts, "iMixes" (pre-made audio file mixes), and celebrity playlists which incorporate a fitness theme.  Such products are marketed to consumers under a link entitled "Nike Sport Music," specifically for facilitating the use of the IPOD player in connection with exercise activities.

**The Fame of Apple's Trademarks**

32.     In the almost five years that Apple has been continuously using the **IPOD** mark in interstate commerce, it has spent hundreds of millions of dollars advertising and promoting its goods and services under the **IPOD** mark in a variety of media, including but not limited to television, radio, a wide variety of general circulation and specialized print media, billboards, trade shows and the Internet.  The goods and services offered by Apple under the **IPOD** mark have been the subject of many thousands of articles in general circulation newspapers and magazines, as well as radio, television and Internet broadcasts.

33.     By virtue of the long, continuous and exclusive use by Apple of the **IPOD** mark and the extensive and costly national and international marketing efforts and repeated association of Apple's goods and services with the **IPOD** mark, Apple's mark has become famous all over the world.  As a result, the consuming public in California and nationwide uses the **IPOD** mark to identify Apple's goods and services, and associates the mark with Apple exclusively.  Because of the consistent quality of Apple's goods and services marketed under and in association with the **IPOD** mark, Apple has established considerable good will and reputation with respect to its goods and services.

34.     Apple's use of the **IPOD** mark has been exclusive and continuous since long prior to the date of Defendant's first use of its mark.  Furthermore, Apple's **IPOD** mark became famous long before the date of Defendant's first use of the infringing POD-formative marks referenced herein.  The **IPOD** mark is well known and is an asset of immense value to Apple.

**Defendant's Wrongful Conduct**

35.     On information and belief, Defendant PodFitness launched its business in March 2006 as a direct result of the popularity of the **IPOD** players.  On information and belief, in order to trade on the good will established by Apple in its **IPOD** mark, Defendant intentionally chose the trade name PODFITNESS to deceive and mislead consumers into believing that Defendant's business is somehow affiliated with Apple and Apple's products.  Defendant also engaged in a variety of illegal activities, described below, all for the purpose of creating confusion as to the source of its goods and services in order to profit from the success of the **IPOD** mark.

36.     Defendant has adopted and now uses PODFITNESS as a trademark for its downloadable audio files for handheld media players and related services, which it promotes and provides on the Internet through its website located at *www.podfitness.com*.

37.     In order to provide its services, Defendant requires its subscribers to download Apple's ITUNES software so that it can mix a trainer's voice with music from the subscriber's ITUNES media library.  Defendant allows a user to select: 1) a particular trainer, 2) a particular exercise, and 3) a particular ITUNES playlist from the subscriber's music library.  Once the subscriber has installed ITUNES on his computer, he must then download the Podfitness software application, the Podfitness Mixer.  The Podfitness application has intelligence to cater the trainer's voice to the subscriber (i.e. according to the selected exercise, the user's fitness level controls cadence, number of reps, number of sets, etc.).  The result is a customized audio workout that plays the subscriber's music as background music to the trainer's voice instruction.  Defendant's services entirely depend on Apple's proprietary ITUNES software to store, manage, play, control the audio content, and encode the mixed media into MPEG-4 format.

38.     Upon information and belief, after Apple's creation of the ITUNES software, and with full access to and knowledge of the ITUNES software, Defendant began manufacturing and promoting a software application, the Podfitness Mixer, which represents a derivative work of the ITUNES Software.  The Podfitness Mixer is used in connection with the creation and distribution of customized audio workout files, in direct competition with Apple's Nike Sport Music products and services.

39.     Defendant charges subscribers $19.95 per month to use the application, without any of the fees going to Apple.

40.     Below is a snapshot of the Podfitness User Interface: the Podfitness Mixer.  The user interface allows the subscriber to select a trainer, select an exercise, select an ITUNES playlist, and then mix.  The result is an MPEG-4 Audio File, a mix of the trainer's voice and the subscriber's music, that gets saved into an ITUNES playlist entitled "Podfitness."



41.    On information and belief, Defendant obtained access to the ITUNES software (also referred to herein as the "Apple Software") data by agreeing to the terms and conditions of the "iTunes COM for Windows SDK License Agreement," attached hereto as Exhibit O.  The iTunes COM for Windows SDK License Agreement expressly provides that "[n]o names, trademarks, service marks or logos of Apple Computer, Inc. may be used to endorse or promote products derived from the Apple Software without specific prior written permission from Apple."

42.    On information and belief, Defendant has also agreed to the "Apple Developer Connection Terms and Conditions," attached hereto as Exhibit P.  Section 2 of the Apple Developer Connection Terms and Conditions expressly provides: "You agree to follow Apple's Guidelines for Using Apple Trademarks and Copyrights as published on Apple's website at *http://www.apple.com/legal/trademark/guidelinesfor3rdparties.html* and as may be modified from time to time.  You agree not to use the marks 'Apple," the Apple Logo, and 'Mac,' or any other marks belonging or licensed to Apple in any way except as expressly authorized by Apple."

43.    Defendant has not obtained permission from Apple to use images of Apple products and the Apple trademarks, including **IPOD**, ITUNES, the Earbud Trade Dress, and the Shuffle logo, in connection with its Podfitness Mixer and the resulting Podfitness Goods and Services.

44.    Defendant's PODFITNESS product is directly competitive with goods and services offered by Apple under its **IPOD** mark, including, but not limited to Nike +**IPOD**.

45.    Defendant has also adopted the following logo (on the left) (herein referred to as the "PODFITNESS.COM Logo") for its products and services, which it promotes on its website and which incorporates an image of white and grey earbuds that are strikingly similar to the Earbud Trade Dress:

    

The Earbud Trade Dress is depicted above on the right.  A captured image of the Defendant's website showing use of the PODFITNESS.COM Logo in commerce is attached hereto as Exhibit Q.  A printout of Apple's website showing use of the Earbud Trade Dress in commerce is attached hereto as Exhibit R.  While Defendant has removed many instances of the Podfitness.com Logo from its website in response to the filing this lawsuit, the logo has been utilized as recently as January 31, 2007 in connection with a launch party for Defendant's new television program on Lifetime Television entitled "My Workout…Powered by Podfitness."  Defendant also continues to utilize the Podfitness.com Logo in its business to this day.

46.    Defendant has also copied and prominently displays Apple's registered **IPOD** mark throughout its *www.podfitness.com* website and particularly on the homepage, including in the tagline: "Put a Personal Trainer right on your IPOD®," and the bold caption: "Customized IPOD Workouts" (although Defendant recently removed both phrases from its home page after Apple filed this lawsuit).  Defendant repeatedly displays conspicuous photos of the **IPOD** product on the site, and prominently features images of individuals exercising while wearing Apple's well-known Earbud Trade Dress.  (See Exhibit S for captured images of Defendant's website dated July 27, 2006 and September 20, 2006).  In the "Support" section of the website, Defendant states that "you will need to have [Apple's] ITUNES 6 installed in order to use the PodFitness software."

47.    On information and belief, Defendant has directly copied images of the **IPOD** player from Apple's website at *www.apple.com* to use on its own *www.podfitness.com* website, as shown in the comparison below.  A captured image of Apple's **IPOD** player from Apple's website

1    is depicted below to the right.  (See Exhibit T for a full printout from Apple's website showing

2    images of its **IPOD** players.)  The virtually identical image to the left is taken from Defendant's

3    website (see Exhibit S for captured images from Defendant's website).




16    48.    Defendant has also used Apple's registered **IPOD** mark in the metatags of each

17    page on its *www.podfitness.com* website, causing Defendant's website to appear as a "hit" when a

18    query is conducted through a search engine for the following phrases: "**IPOD** workout music"; "**I**

19    **POD** trainer"; "**I POD** workout"; "**I POD** workouts"; "**IPOD** workouts"; "**IPOD** trainer."

20    49.    Defendant is also listed as a sponsored link on the search engine *www.google.com*

21    in connection with the keywords "**IPOD** Workout" and "**IPOD** Fitness," causing a link to the

22    *www.podfitness.com* website to appear prominently in the top banner or right margin of the screen

23    in response to a search query for such terms.

24    50.    In addition to using **IPOD** as a metatag and keyword, Defendant has incorporated

25    the mark into its domain names.  Defendant registered and uses the domain names *ipodfitness.com*

26    and *ipodworkouts.com* to automatically re-direct to its homepage at *podfitness.com*.

27    51.    Defendant posted the following explanation for the inspiration behind the creation

28    of Podfitness on its *www.podfitness.com* website:

15

**Supernova Marketplace: The Intersection of Music, iPod and Fitness**
When Podfitness was founded in January 2005, Apple had sold just over 10 million iPods. Sensing a major shift coming, CEO Jeff Hays gambled that the iPod-led MP3 revolution had the potential not only to change the economics of the music business, but also the fitness industry. This began a multimillion-dollar process of conceptualizing, building, and refining the idea of Podfitness.

Now, in 2006, there have been over 50 million iPods sold, and the "Made for iPod" market is white-hot. In addition, the number of people focusing on fitness has never been higher: there are 40 million fitness club members in the U.S. alone.

Not coincidentally, at this exact time, Podfitness is at the culmination of 18 months' efforts…

*https://podfitness.com/web/template/corporate?aff=home*

52.    On March 16, 2006, Defendant ran a full-page advertisement in the Wall Street Journal, which stated in large type:

Dear Steve Jobs,
Thanks for the IPOD®.
Best,
Jeff Hays

P.S. Wait till you hear what we did with it!
Call me, 801-990-3238

The bottom of the advertisement prominently displayed the white earbuds shown in the PODFITNESS.COM Logo mark along with the tagline "Your Music. Your Workout. Your Way." Underneath the logo in smaller print, the advertisement read:

"If you're not Steve, and would like to download unlimited, customized training sessions

mixed with your music, it's only $19.95 per month.  For you Steve, it's on the house.

www.podfitness.com/steve."

A copy of the above-referenced advertisement is attached hereto as Exhibit U.

53.    Also on the PODFITNESS website at *www.podfitness.com/steve*, Defendant

posted the following "letter" to Steve Jobs:

Dear Steve,

Thanks for coming to the site.

Can I tell you a quick story?

Like millions of others, in December of 2004 my 44-year-old wife and I got iPods for Christmas. My 25 year old son was on his 3rd, our teenagers were on their 1st or 2nd. But when my techno-phobic wife got one... well, it was obvious that the

iPod had crossed the chasm. Like the rest of the business world, I couldn't wait to be involved.

So, a month later (January 2005), I filed a couple of patent applications for an idea that I'd been tinkering with for a while. I called it Podfitness. The idea was to create a service that would create customized, downloadable, personalized audio workouts that could each be mixed with the users' own favorite music. So, off we went...

After we embarked on a yearlong programming journey, as you know, Apple went on to sell 32 million more iPods. (Congratulations, by the way!) This was terrific, but of course "competitors" started appearing. Dang it! None of them were creating anything new, no technology, it was just people taking static workouts and converting them to mp3. We could have done that on our first day, (heck, my 15 year old does it every day, what's the big deal about ripping a CD?) It was pure hell to sit back and watch people enter the market with... well, nothing. All the while, we're quietly working away, burning cash, programming, partnering and recording. And the clock was ticking...

Well, it took us over a year and a couple of million dollars, but we did it.

54.    It is widely known to the public that Steve Jobs is the CEO of Apple.  Neither Steve Jobs, nor Apple, authorized this use of his name in Defendant's advertisements for the PODFITNESS product.

55.    Defendant has also imitated Apple's renowned silhouette advertisements.  One example shows a silhouette of a snowman wearing what is clearly an **IPOD** player with the telltale white earbuds.  The caption simply states "Ice Ice Baby: Everyone has their favorite  holiday song, what's yours?  Happy Holidays from Podfitness and Power Music."  *See* Exhibit V.  Another shows a silhouette of an individual in a yoga position wearing the earbuds.  *Id.*

56.    On information and belief, Defendant used these commercial advertisements for the purpose of misleading and confusing the public about its association with Apple, and to trade on the good will, reputation and fame of Apple, its CEO and its **IPOD** player, and its enormous investment in the **IPOD** mark, and to unjustly enrich itself at the expense of Apple and the public.

57.    On information and belief, Defendant has entered into an arrangement with the W Hotels whereby guests at the hotels are offered a free subscription to Defendant's services.  On information and belief, Defendant has used this commercial opportunity for the purpose of misleading and confusing the public about its association with Apple.

58.    To further mislead the public about its association with Apple, Defendant has also

attempted to bundle its services with other IPOD accessories.  On August 5, 2006, Defendant

entered into an agreement with Marware (one of Apple's largest IPOD accessory providers)

regarding the cross-promotion of the company's respective goods and services.

59.    Defendant has also adopted the following arrow logo (on the left is an image from

the *podfitness.com* web site) for its products and services, which it promotes on its website and

which is identical to Apple's shuffle logo, the subject of U.S. Registration No. 3,067,950 for

"portable and handheld digital electronic devices, and parts therefore sold together as a unit, for

recording, organizing, transmitting, manipulating, and reviewing data and audio files; computer

software for use in organizing, transmitting, manipulating, and reviewing data and audio files on

portable and handheld digital electronic devices" (the "Shuffle Logo").

 

Apple's Shuffle Logo is depicted on the right.

60.    Defendant also uses aspects of Apple's **MADE FOR IPOD** logo, the subject of

U.S. Application Serial No. 78/689,534, to promote and sell its goods and services.

61.    Apple has not consented to any of Defendant's uses of its **IPOD** mark or its

product images, nor any mark comprised in whole or part of **POD**, nor has Apple sponsored,

endorsed or approved the goods or services offered and promoted by Defendant.  Nor is there any

affiliation between Apple and Defendant.

62.    On November 29, 2005, Defendant filed Application Serial No. 78/762,928 with

the United States Patent and Trademark Office (USPTO) to register the PODFITNESS mark for

its products and services in three classes, including the same class of goods for which **IPOD** is

registered, namely:

Class 9: Downloadable music, audio programs and audio files; downloadable music
recordings for exercise programs, fitness plans and training systems

Class 35: On-line retail store services in the field of music, audio programs and audio files;
on-line retail store services featuring downloadable pre-recorded music; on-line retail store

services in the field of exercise programs, fitness plans and training systems

Class 41: Providing an on-line computer database featuring information regarding exercise programs, fitness plans and training systems; providing an on-line computer database in the field of music, audio programs and audio files for exercise programs, fitness plans and training systems; providing digital music from web sites on the Internet; providing digital music from the Internet

(the "PodFitness Goods and Services").

63.    On December 17, 2005, Defendant filed Application Serial No. 78/775,610 with the USPTO to register the PODFITNESS.COM Logo mark for the PodFitness Goods and Services.

64.    On January 9, 2006, Defendant filed Application Serial No. 78/787,637 with the USPTO to register the PODPOCKET mark for clothing , namely, "blouses; caps; coats; footwear; gloves; hats; headwear; jackets; jerseys; pants; pullovers; shirts; short-sleeved or long-sleeved t-shirts; shorts; socks; sweaters; t-shirts; tops; underwear."

65.    On January 27, 2006, Defendant filed Application Serial No. 78/800,739 with the USPTO to register the mark PODWORKOUT mark for PodFitness Goods and Services.

66.    Defendant's marks described in paragraphs 49 and 50 will be referred to herein as the "Infringing Marks."  All of Defendant's above-listed marks in paragraphs 49-52 will be collectively referred to herein as the "PodFitness Marks."

67.    Promptly upon learning of Defendant's use of PODFITNESS as a trade name and trademark, on March 14, 2006, Apple's counsel sent a letter to Jeffrey Hays, Defendant's president, notifying him that Defendant's use of the PODFITNESS mark and the depiction of Apple's Earbud Trade Dress as part of the PODFITNESS.COM Logo mark infringed Apple's trademark rights and diluted the distinctive quality of Apple's **IPOD** marks.  Apple requested that Defendant cease its use or intended use of the PodFitness Marks and its plans to launch the product, which Defendant's website indicated was scheduled for March 21, 2006.  Apple also requested Defendant abandon its pending applications for the PodFitness Marks.

68.    On March 20, 2006, Apple's counsel called Mr. Hays and put him on notice again of the unlawfulness of Defendant's actions before it proceeded with its scheduled launch.

69.    Shortly thereafter, Defendant proceeded to launch its PODFITNESS service despite notice and knowledge of Apple's concerns.

70.    Despite repeated efforts, Apple has been unable to obtain Defendant's agreement to voluntarily cease the infringing and diluting activities, referred to above, and the infringing and diluting conduct continues today.  Defendant's pattern of conduct and its outright refusal to respect Apple's trademark rights confirms Apple's belief that Defendant deliberately and willfully selected and is using marks similar to Apple's famous trademarks to mislead and confuse consumers into believing that Defendant's goods and services are provided, sponsored, or approved by Apple, and to mislead consumers that Defendant is somehow associated with Apple. Defendant is improperly trading on Apple's reputation and good will and its enormous investment in and promotion of the **IPOD** mark, and is diluting the distinctiveness of the **IPOD** mark.

71.    Apple, the famous **IPOD** mark, and the business of Apple are known to Defendant and were known to Defendant at the time it adopted the PodFitness Marks and began offering its goods and services under the Infringing Marks.

72.    Defendant's first commercial use of the Infringing Marks for its goods and services occurred much later than Apple's first use of the **IPOD** mark for its goods and services, and well after Apple's **IPOD** mark had become famous.

73.    Defendant's trademark applications for the PodFitness Marks were all filed subsequent to the application date for Apple's **IPOD** registrations and **POD** application.

74.    On information and belief, Defendant adopted the "POD" portion of its mark to make a direct reference to Apple's **IPOD** product, with full knowledge that POD is used as a slang term for **IPOD**.

75.    The PodFitness Marks are identical or very similar to Apple's marks, the most prominent element of the PodFitness Marks, "POD," comprising the most prominent element of Apple's **IPOD** mark.  In addition, the dominant element of the PodFitness Marks, "POD," is identical to the "POD" slang term used to refer to the IPOD products.

76.    Defendant uses, or intends to use, the PodFitness Marks on goods and services that are identical, or at least highly related, to Apple's **IPOD** goods and related services.

77.     Defendant's promotion and sales of its goods and services under the Infringing

Marks are directed to consumers of Apple's **IPOD** products and are conducted through the same

channels of trade as are used by Apple to promote and sell its **IPOD** goods and related services.

78.     Defendant's use of the Infringing Marks and Defendant's actions described herein

are likely to cause confusion, deception and/or mistake in the marketplace, the relevant industry,

and all channels of trade for Apple's **IPOD** goods and related services.

79.     Defendant's use of the Infringing Marks and Defendant's actions described herein

cause dilution of the famous **IPOD** mark.

80.     Defendant's use of the Infringing Marks and its actions described herein have

been, and continue to be, deliberate, willful, and with disregard to the rights of Apple.

81.     Defendant's continuing conduct constitutes an ongoing threat to Apple and the

public.  Apple has sustained and will continue to sustain irreparable injury as a result of

Defendant's conduct, which injury is not compensable by the award of monetary damages.  Unless

Defendant is restrained and enjoined from engaging in its infringing and diluting conduct, Apple

will continue to suffer irreparable injury.

### FIRST CAUSE OF ACTION
### (Trademark Infringement – 15 U.S.C. § 1114(1))

82.     Apple incorporates herein by reference each and every allegation in the preceding

paragraphs.

83.     Prior to Defendant's adoption of the PodFitness Marks and use of the Infringing

Marks, Defendant either had actual notice and knowledge, or constructive notice (pursuant to 15

U.S.C. § 1072), of Apple's ownership and registrations of the **IPOD** mark.

84.     On information and belief, Defendant was aware of Apple's business and its

**IPOD** mark and registrations prior to Defendant's adoption of the PodFitness Marks and use of

the Infringing Marks in connection with its business.

85.     On information and belief, Defendant deliberately and willfully used and is using

the Infringing Marks in an attempt to trade on the enormous goodwill, reputation and selling

power established by Apple under the **IPOD** mark, and to create a false impression of association

1    with Apple.

2        86.      On information and belief, Defendant has used the Infringing Marks as

3 trademarks in interstate commerce, including in this judicial district.

4        87.      On information and belief, the goods and services offered and/or sold by

5 Defendant under the Infringing Marks are moving and will continue to move through the same

6 channels of trade, and are being offered and/or sold through the same channels of advertising and

7 to the same consumer groups, as the goods and services that are offered and sold by Apple under

8 the **IPOD** mark.

9        88.      Apple has not consented to Defendant's use of the Infringing Marks.

10        89.      Defendant's unauthorized use of term "POD" as a key component of its Infringing

11 Marks falsely indicates to consumers that Defendant's goods and/or services are in some manner

12 connected with, sponsored by, affiliated with, or related to Apple, and/or the products and services

13 of Apple.

14        90.      Defendant's unauthorized use of the Infringing Marks is also likely to cause

15 consumers to be confused as to the source, nature and quality of the goods and/or services that

16 Defendant is selling in connection with the Infringing Marks.

17        91.      Defendant's unauthorized use of the Infringing Marks has already caused actual

18 consumer confusion as to the source, nature and quality of the goods and/or services that

19 Defendant is selling in connection with the Infringing Marks.

20        92.      Defendant's unauthorized use of the Infringing Marks, as set forth herein,

21 facilitates the acceptance of Defendant's goods and/or services throughout the marketplace, not

22 based on the quality of the goods and services provided by Defendant, but on the association that

23 the public is likely to make with Apple and the reputation and goodwill associated with Apple's

24 goods and services.

25        93.      Defendant's unauthorized use of the Infringing Marks deprives Apple of the

26 ability to control the quality of the goods and services marketed under the **IPOD** mark, and

27 instead, places Apple's valuable reputation and goodwill into the hands of Defendant, over whom

28 Apple has no control.

94.    The aforementioned activities of Defendant are likely to cause confusion or mistake, or to deceive consumers or potential consumers wishing to purchase Apple's products and services, and is also likely to confuse consumers as to an affiliation between Apple and Defendant.

95.    The aforementioned activities of Defendant have already caused actual consumer confusion as to an affiliation between Apple and Defendant.

96.    The aforementioned acts of Defendant constitute federal trademark infringement in violation of 15 U.S.C. § 1114.

97.    The intentional and willful nature of Defendant's acts makes this an exceptional case under 15 U.S.C. § 1117(a).

98.    Apple has been, is now, and will be irreparably harmed by Defendant's aforementioned acts of infringement, and unless enjoined by the Court, Defendant will continue to infringe upon the **IPOD** mark.  There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

**SECOND CAUSE OF ACTION**
**(Trademark Infringement, Unfair Competition, and False**
**Designation of Origin – 15 U.S.C. § 1125(a))**

99.    Apple incorporates herein by reference each and every allegation in the preceding paragraphs.

100.    Apple is informed and believes that Defendant chose its trade name, domain name and the PodFitness Marks, and took the other actions alleged above, to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, association or approval of the goods and services of Defendant, deliberately to pass off Defendant's goods and services as those of Apple, and/or to falsely imply an association with Apple.

101.    Defendant's acts as alleged herein constitute, among other things, false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact which are likely to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, association or approval of the goods and services of Defendant.

102.    Defendant's conduct constitutes trademark infringement and unfair competition in

1 | violation of 15 U.S.C. § 1125(a).

2 | 103.    Unless enjoined, Defendant will continue its infringing conduct.

3 | 104.    As a direct and proximate result of Defendant's infringing conduct, Apple has

4 | suffered and will continue to suffer irreparable injury to its business reputation and goodwill for

5 | which no adequate remedy exists at law, and has lost sales and profits in an amount not yet fully

6 | ascertained.

7 | 105.    Defendant's conduct complained of herein is malicious, fraudulent, knowing,

8 | willful, and deliberate entitling Apple to an accounting of Defendant's profits, increased damages,

9 | and an award of its attorneys' fees and costs incurred in prosecuting this action under 15 U.S.C. §

10 | 1117.

11 |
12 |

**THIRD CAUSE OF ACTION**
**(Trade Dress Infringement - 15 U.S.C. § 1125(a))**

13 | 106.    Apple incorporates herein by reference each and every allegation in the preceding

14 | paragraphs.

15 | 107.    Apple is the owner of common law rights throughout the United States in the

16 | Earbud Trade Dress.

17 | 108.    The Earbud Trade Dress has been prominently displayed in Apple's advertising

18 | for the **IPOD** player, and, most famously, is featured in Apple's popular silhouette advertising

19 | campaigns.  As a result of this well-known advertising campaign and the success of the **IPOD**

20 | products, the Earbud Trade Dress has come to be associated exclusively with Apple and its **IPOD**

21 | players.  (See Exhibit R).

22 | 109.    The Earbud Trade Dress has become distinctive of Apple's digital music products

23 | and services, and distinguishes Apple's goods and services from those offered by others.

24 | 110.    The Earbud Trade Dress was distinctive long before Defendant began offering its

25 | services on the *podfitness.com* website in connection with the PODFITNESS.COM Logo.

26 | 111.    The Earbud Trade Dress is non-functional.

27 | 112.    Defendant's unauthorized use of the PODFITNESS.COM Logo, which

28 | incorporates the dominant elements comprising the Earbud Trade Dress, is likely to cause

24

1    confusion, to cause mistake, or to deceive as to the source of the goods and services by Defendant,
2    or as to affiliation, connection, association, sponsorship, or approval of such goods and services.

3          113.  Defendant's unauthorized use of the PODFITNESS.COM Logo, which
4    incorporates the dominant elements comprising the Earbud Trade Dress, is likely to cause the
5    public to believe that the goods and services Defendant is offering originate from Apple or are
6    associated with Apple.

7          114.  Defendant's unauthorized use of the PODFITNESS.COM Logo, which
8    incorporates the dominant elements comprising the Earbud Trade Dress, constitutes a commercial
9    use in interstate commerce.

10         115.  Defendant's unauthorized use of the PODFITNESS.COM Logo, which
11    incorporates the dominant elements comprising the Earbud Trade Dress, constitutes trade dress
12    infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C.§ 1125(a).

13         116.  As a direct and proximate result of Defendant's infringing conduct, Apple has
14    suffered and will continue to suffer irreparable injury to its business reputation and goodwill for
15    which no adequate remedy exists at law, and has lost sales and profits in an amount not yet fully
16    ascertained.

17         117.  Defendant's conduct complained of herein is malicious, fraudulent, knowing,
18    willful, and deliberate entitling Apple to an accounting of Defendant's profits, increased damages,
19    and an award of its attorneys' fees and costs incurred in prosecuting this action under 15 U.S.C. §
20    1117.

21
                              **FOURTH CAUSE OF ACTION**
22                  **(Trademark Dilution – 15 U.S.C. § 1125(c))**

23         118.  Apple incorporates herein by reference each and every allegation in the preceding
24    paragraphs.

25         119.  The **IPOD** mark and product have been and continue to be extensively promoted
26    and marketed nationwide.  As a result, the **IPOD** mark has gained strong national public
27    recognition and is eligible for protection against dilution as a distinctive and famous mark.

28         120.  The **IPOD** mark is well known, is of great value to Apple, is recognized and

1    relied upon by the trade and the public as identifying Apple as the source of Apple's goods and

2    services, and serves to distinguish Apple's goods and services from those of others.  Apple's use

3    of the **IPOD** mark has been exclusive and continuous since long prior to the date of Defendant's

4    use of the Infringing Marks.

5        121.    Defendant's use of the Infringing Marks in the advertising and promotion of its

6    goods and/or services dilutes the strength and value of the **IPOD** mark.

7        122.    Without injunctive relief, Apple has no means by which to control the continuing

8    injury to its reputation and goodwill or of the continuing dilution of its trademark.  Apple has been

9    and will continue to suffer irreparable injury for which no adequate remedy exists at law.

10       123.    Defendant's conduct complained of herein is malicious, fraudulent, knowing,

11   willful, and deliberate entitling Apple to an accounting of Defendant's profits, increased damages,

12   and an award of its attorneys' fees and costs incurred in prosecuting this action under 15 U.S.C. §

13   1117.

14                          **FIFTH CAUSE OF ACTION**
     **(Trademark Infringement – Cal. Bus. & Prof. Code §14335 *et seq.*)**

15

16       124.    Apple incorporates herein by reference each and every allegation in the preceding

17   paragraphs.

18       125.    Defendant engaged in the acts as alleged herein to enhance the commercial value

19   of its goods or services.

20       126.    Defendant's acts as alleged herein constitute, among other things, unauthorized

21   use or infringement of Apple's trademark rights under California Business and Professions Code

22   §§ 14335 *et seq.*

23       127.    Unless enjoined, Defendant will continue its infringing conduct.

24       128.    As a direct and proximate result of Defendant's infringing conduct, Apple has

25   suffered and will continue to suffer irreparable injury to its business reputation and goodwill for

26   which no adequate remedy exists at law and has lost sales and profits in an amount not yet fully

27   ascertained.

28       129.    Because Defendant's actions have been committed willfully, maliciously and

                                    26

intentionally, Apple is entitled to recover Defendant's profits together with Apple's damages, trebled, costs of the action, and reasonable attorneys' fees pursuant to Cal. Bus & Prof. Code §§14320, 14330, and 14340.

### SIXTH CAUSE OF ACTION
### (Trademark Dilution - Cal. Bus. & Prof. Code § 14330)

130.    Apple incorporates herein by reference each and every allegation in the preceding paragraphs.

131.    The **IPOD** mark has been and continues to be extensively promoted and marketed nationwide. As a result, the **IPOD** mark has gained strong national public recognition and is eligible for protection against dilution as a distinctive and famous mark.

132.    Defendant's use of the Infringing Marks in the advertising and promotion for its goods and/or services dilutes the distinctive quality of the **IPOD** mark.

133.    The above acts by Defendant constitute trademark dilution under California Business & Professions Code § 14330, the analogous statutes of other states, and under California common law.

134.    Without injunctive relief, Apple has no means by which to control the continuing injury to its reputation and goodwill or of the continuing dilution of its trademark. Apple has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Apple if it loses the ability to control the use of its **IPOD** mark and the reputation and goodwill attendant thereto through the false and unauthorized use of its trademark.

### SEVENTH CAUSE OF ACTION
### (Unfair Unlawful and Deceptive Business Practices - Cal. Bus. & Prof. Code § 17200 *et seq.*)

135.    Apple incorporates herein by reference each and every allegation in the preceding paragraphs.

136.    Defendant's business practices alleged above are unfair and offend public policy as they were unlawful, unfair, unscrupulous, and substantially injurious to Apple and consumers.

137.    The above acts by Defendant constitute unfair competition and unfair business practices in violation of the Section 17200 *et seq.* of the California Business & Professions Code,

1   prohibiting unfair, unlawful and deceptive business acts.

2       138.    Pursuant to California Business and Professions Code § 17203, Apple is entitled

3   to enjoin these practices.

4       139.    Without injunctive relief, Apple has no means by which to control Defendant's

5   deceptive and confusing use and advertising of its marks.  Apple is therefore entitled to injunctive

6   relief prohibiting Defendant from continuing such acts of unfair competition, and appropriate

7   restitution remedies, pursuant to California Business and Professions Code § 17203.

8                            **EIGHTH CAUSE OF ACTION**
                             **(Untrue and Misleading Advertising -**
9                            **Cal. Bus. & Prof. Code §§ 17500 and 17535)**

10      140.    Apple incorporates herein by reference each and every allegation in the preceding

11  paragraphs.

12      141.    Defendant's use of Apple's **IPOD** mark and other marks confusingly similar to

13  Apple's **IPOD** mark in advertising constitutes advertising done with the intent to directly or

14  indirectly induce the public to enter into business transactions with Defendant regarding

15  Defendant's services.

16      142.    Defendant's actions have caused, and are likely to continue to cause confusion

17  and mistake, and to deceive as to the affiliation, connection or association of Defendant and

18  Apple, and as to the origin, sponsorship, or approval of Defendant's goods and services by Apple

19  and/or the origin, sponsorship, or approval of Apple's goods and services by Defendant, to

20  Apple's harm.

21      143.    In making and disseminating advertising and promotional materials as alleged

22  herein, Defendant knew, or by the exercise of reasonable care should have known, that the

23  statements were untrue and/or misleading and so acted in violation of California Business &

24  Professions Code § 17500 and/or § 17535. Defendant's unlawful actions have caused, and will

25  continue to cause, irreparable harm to Apple unless enjoined.

26                           **NINTH CAUSE OF ACTION**
                             **(Breach of Contract)**
27

28      144.    Apple incorporates herein by reference each and every allegation in the preceding

                                    28

paragraphs.

145.    On information and belief, a valid contractual relationship exists between Defendant and Apple, the terms of which are set forth in the iTunes COM for Windows SDK License Agreement.

146.    On information and belief, a valid contractual relationship exists between Defendant and Apple, the terms of which are set forth in Apple Developer Connection Terms and Conditions.

147.    Apple has fully performed its obligations under both the iTunes COM for Windows SDK License Agreement and the Apple Developer Connection Terms and Conditions by granting Defendant access to its proprietary ITUNES software.

148.    Defendant has failed to perform its obligations under both the iTunes COM for Windows SDK License Agreement and the Apple Developer Connection Terms and Conditions by using images of Apple products and the Apple trademarks, including IPOD, ITUNES, the Earbud Trade Dress, and the Shuffle Logo, in connection with the Podfitness Goods and Services, in breach of contract and without authorization from Apple.

149.    Defendant has also failed to perform its obligations under the Apple Developer Connection Terms and Conditions by violating Apple's Guidelines for Using Apple Trademarks and Copyrights, as published on Apple's website at

*http://www.apple.com/legal/trademark/guidelinesfor3rdparties.html.*

150.    Unless enjoined, Defendant will continue its infringing conduct.

151.    As a direct and proximate result of Defendant's infringing conduct, Apple has suffered and will continue to suffer irreparable injury to its business reputation and goodwill for which no adequate remedy exists at law and has lost sales and profits in an amount not yet fully ascertained.

### TENTH CAUSE OF ACTION
### (Cybersquatting - Lanham Act § 43(d), 15 U.S.C. § 1125(d))

152.    Apple incorporates herein by reference each and every allegation in the preceding paragraphs.

153. Defendant has registered and used the domain names *ipodfitness.com* and *ipodworkouts.com* to automatically re-direct to its homepage at *podfitness.com*.

154. The domain names *podfitness.com*, *ipodfitness.com* and *ipodworkouts.com* are identical to, confusingly similar to, and/or dilutive of Apple's **IPOD** marks. Defendant has used and is using the *podfitness.com*, *ipodfitness.com* and *ipodworkouts.com* domain names with the bad faith intent to profit from Apple's **IPOD** marks.

155. Defendant's actions constitute a violation of Lanham Act § 43(d), 15 U.S.C. § 1125(d).

156. Defendant's unlawful actions have caused, and will continue to cause, Apple irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, in consideration of the foregoing, Apple respectfully requests that this Court enter an Order granting the following relief:

a) For judgment that the **IPOD** and **POD** marks have been and continue to be infringed by Defendant;

b) For judgment that the **IPOD** mark has been and continues to be diluted by Defendant;

c) Permanently enjoining Defendant and each of its agents, employees, servants, officers, directors, successors in interest, heirs, assigns and all persons, firms or corporations, acting by or under their authority, in active concert or privity or in participation with it, from using the **IPOD** and **POD** marks or any confusingly similar marks in any way or using any word, words, phrases, symbols, logos, or any combination of words or symbol that would create a likelihood of confusion, mistake, or deception therewith, including, without limitation, the PodFitness Marks, in connection with or in the marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing, developing, or manufacturing of Defendant's business, services, and goods;

d) Permanently enjoining Defendant to recall from all its offices and all others, whether persons, firms, or corporations, acting by or under their authority, in active concert or privity or in participation with it, any material containing the **IPOD** or **POD** mark in any

way and any word, words, phrases, symbols, logos, any combination of words or symbols that would create a likelihood of confusion, mistake and/or deception therewith, including, without limitation, the PodFitness Marks, in connection with or in the marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing, developing, or manufacturing of Defendant's business, goods and services;

e)   Permanently enjoining Defendant, its officers, agents, employees, and all persons acting in concert with them, from infringing the **IPOD** and **POD** marks and/or engaging in further such unlawful acts and from reaping any additional commercial advantage from its misappropriation of the rights of Apple and all affiliated and related companies of Apple in the **IPOD** and **POD** marks and the registrations of these marks;

f)   Requiring Defendant to destroy, at its sole and exclusive cost, all materials in its possession or under its control that contain infringements of the **IPOD** and **POD** marks;

g)   Ordering the Director of the United States Patent and Trademark Office to order that Defendant is not entitled to any trademark registrations for the PodFitness Marks and any word, words, phrases, symbols, logos, or any combination of words or symbols that would create a likelihood of confusion, mistake, and/or deception therewith, including, without limitation, Defendant's Trademark Application Serial Numbers 78/762,928; 78/775,610; 78/800,739; and 78/787,637;

h)   Ordering that the *<www.podfitness.com>*, *<ipodfitness.com>*, and *<ipodworkouts.com>* domain names be transferred to Apple;

i)   For all actual damages sustained by Apple as the result of Defendant's acts of infringement and/or dilution, together with prejudgment interest, according to proof, pursuant to 15 U.S.C. § 1117;

j)   For an accounting of the profits of Defendant resulting from their acts of infringement and/or dilution pursuant to 15 U.S.C. § 1117;

k)   For enhanced damages pursuant to 15 U.S.C. § 1117;

l)   For an award of attorneys' fees pursuant to 15 U.S.C. § 1117 or as otherwise permitted by law;

1    m) For Apple's costs of suit, including its reasonable litigation expenses, pursuant to 15

2        U.S.C. § 1117; and

3    n)  Granting Apple such additional, other, or further relief as the Court deems proper and just.

4

5                        **<u>DEMAND FOR JURY TRIAL</u>**

6        Plaintiff demands trial by jury on all issues so triable.

7    DATED:  August 1, 2007                    Respectfully submitted,

8                                            FISH & RICHARDSON P.C.

9

10                                       By:  /s/ David J. Miclean

11                                            David J. Miclean
                                             Lisa M. Martens
12                                            Andrew M. Abrams

13                                            Attorneys for Plaintiff
                                             APPLE INC.
14

15   50418386.doc

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am employed in the County of San Diego. My business address is Fish & Richardson P.C., 12390 El Camino Real, San Diego, California 92130. I am over the age of 18 and not a party to the foregoing action.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for personal delivery, for mailing with United States Postal Service, for facsimile, and for overnight delivery by Federal Express, Express Mail, or other overnight service.

On August 1, 2007, I caused a copy of the following document(s):

**FIRST AMENDED COMPLAINT**

to be served on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, and addressed as follows:

William S. Farmer                                    Attorneys For Defendant
Jacob Alpern                                         PODFITNESS, INC.
Collette Erickson Farmer & O'Neill LLP
235 Pine Street, Suite 1300
San Francisco, CA 94104-2733
Telephone: (415) 788-4646
Facsimile: (415) 788-6929

Charles J. Veverka                                   Attorneys For Defendant
Robert A. Aycock                                     PODFITNESS, INC.
Mark W. Ford
Brett I. Johnson
Workman, Nydegger & Seeley P.C.
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

[X]  **MAIL:**            Such correspondence was deposited, postage fully paid, with the
                          United States Postal Service on the same day in the ordinary course
                          of business.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the above is true and correct. Executed on August 1, 2007, at San Diego, California.

_Nicole Pino_
Nicole C. Pino

33                                                   FIRST AMENDED COMPLAINT
                                                     Case No. C 06-5805 SBA