James M. Wagstaffe (95535)
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105–1528
Telephone: 415.371.8500
Fax: 415.371.0500

James E. Magleby (Utah Bar No. 7247, admitted *pro hac vice*)
Jason A. McNeill (Utah Bar No. 9711, admitted *pro hac vice*)
**MAGLEBY & GREENWOOD, P.C.**
170 South Main Street, Suite 350
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Defendant and
 Counterclaim Plaintiff Podfitness, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OKLAND DIVISION

| | |
|---|---|
| APPLE COMPUTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> PODFITNESS, INC., and DOES 1-100, Inclusive, <br><br> Defendants. | Case No. C 06-05805 SBA <br><br> **OPPOSITION TO MOTION FOR DISCLOSURE OF THE REDACTED INFORMATION IN DOCUMENT NUMBER PF001014** <br><br> Hon. Saundra Brown Armstrong |
| PODFITNESS, INC., <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> APPLE COMPUTER, INC., <br><br> Counterclaim Defendants. | |

- 1 -

# INTRODUCTION

Apple, Inc. ("Apple") wants to play outside the rules, seeking disclosure of a plainly privileged communication. Apple does so by presenting a grossly incomplete version of events,[1] and the failure to apply state and federal precedent providing that attorney client privilege is not waived when disclosing legal advice to a shared employee of a partnership venture, to a third party necessary to further the purpose of the legal advice, or to a party with a common interest in obtaining and carrying out the legal communication. Whether Dave Malone is categorized as a shared employee, an employee of the Podfitness / Power Music partnership, or as an employee of Power Music having a common interest with Podfitness – the privilege remains intact. Therefore, Apple's motion should be denied.

# FACTS

1. In September or October 2005, Podfitness and Power Music began their partnership relationship, working together to advance their joint interest in developing and promoting the business of Podfitness. Podfitness and Power Music struck an agreement, which, although not immediately reduced to writing as is common in startup businesses, provided for Power Music to join Podfitness in pursuing its business, and would allow Power Music to have ownership in Podfitness. [See Declaration of Jeff Hays ("J. Hays Dec."), ¶ 3-4, attached as Exhibit "1"].

---

[1] Apple omits discussion of the key relevant facts of the relationship between Podfitness and Power Music in the time leading up to the execution of the January 2006 Letter of Agreement, and the relationship with Dave Malone and Podfitness prior to being put on the actual payroll of Podfitness. Interestingly, Apple chose not to ask any relevant questions regarding the relationship with Dave Malone and Power Music as of November 29, 2005 – the date in which Apple targets in its instant motion. Whether Apple failed to ask the relevant questions in fear of getting the answers, or because it merely forgot, the result is the same, in that Apple's motion is based on an incomplete version of the relevant facts that cannot support is requested relief.

- 2 -

CASE NO. C 06-05805 SBA   OPPOSITION TO MOTION FOR DISCLOSURE OF THE REDACTED INFORMATION IN DOCUMENT NUMBER PF001014

2. The Power Music /Podfitness venture included using Power Music's existing infrastructure to support Podfitness, including its employees, office space, computers, money resources, support, etc., all of which added monetary value to the business and our common goal in growing the Podfitness business. [J. Hays Dec. ¶ 5, Ex. 1].

3. From the onset of this relationship, Podfitness began operating out of Power Music's office. Power Music and Podfitness also shared key employees, and additional employees were undertaken at Power Music's expense to service this venture. Power Music also designed, placed, and paid for Podfitness advertisements. [J. Hays Dec. ¶ 6, Ex. 1].

4. At the time it partnered with Podfitness, Dave Malone was employed by Power Music, overseeing art and design with Power Music and was part of the executive team who reported directly to Power Music's owner, Richard Petty. [J. Hays Dec. ¶ 7, Ex. 1].

5. After commencing its relationship with Podfitness, Dave Malone became part of the executive team for Podfitness, reporting directly to Jeff Hays as Podfitness' art director, and taking on the responsibility for the design and use of Podfitness' brand and logos on the company's web site, packaging and marketing materials. [J. Hays Dec. ¶ 7, Ex. 1].

6. In this shared employment, while Dave Malone was technically on the payroll of Power Music, Dave Malone was actually an employee of the Podfitness/Power Music partnership, and a "de facto" or "functional equivalent" of a Podfitness employee in the September/October 2005 through May 2006 time period. [J. Hays Dec. ¶ 8, Ex. 1].

7. While serving in this capacity, on November 29, 2005, Dave Malone met with the President and CEO of Podfitness regarding (among other things) the design of Podfitness' logo for its ongoing marketing efforts. [J. Hays Dec. ¶ 9, Ex. 1].

8. In that meeting, as the person responsible for the design and implementation of Podfitness design work, Dave Malone, Jeff Hays and Teri Sund, discussed certain legal advice[2]

---

[2] As an aside, Apple's conclusions about the significance of this legal advice are vastly overstated. However, the effect of this legal advice on the merits of the case is not at issue here, and will not be addressed further.

- 3 -

CASE NO. C 06-05805 SBA    OPPOSITION TO MOTION FOR DISCLOSURE OF THE REDACTED INFORMATION IN DOCUMENT NUMBER PF001014

sought and given in connection with the Podfitness design and logo work to be used or modified. [J. Hays Dec. ¶ 10, Ex. 1].

9. The legal advice communicated to Dave Malone dealt specifically with those functions of which Dave Malone bore primary responsibility and implementation over, and whose involvement was necessary to carry out the purpose of that legal advice. Due to the ownership and partnership role of Power Music, Power Music had a common interest in procuring and implementing that legal advice. [J. Hays Dec. ¶ 11, Ex. 1].

10. The relationship between Podfitness and Power Music and acquisition of Podfitness shares which began in September/October 2005 was eventually memorialized in January 2006, when a Letter of Agreement and Stock Purchase Agreement were executed. [J. Hays Dec. ¶ 12, Ex. 1].

11. Later on, in or about mid 2006, Power Music and Podfitness separated much of their business, and many of the business functions such as customer service and other services performed with Power Music were transitioned to Podfitness, although Power Music retained its ownership interest in Podfitness. [J. Hays Dec. ¶ 13, Ex. 1].In or about June 2006, Dave Malone was placed on the Podfitness payroll and became a formal employee of Podfitness. [J. Hays Dec. ¶ 14, Ex. 1].

## ARGUMENT

### I. BOTH STATE LAW AND FEDERAL COMMON LAW APPLY

Rule 501 of the Federal Rules of Evidence governs evidentiary privileges in district courts. Rule 501 provides in pertinent part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

F.R. Evid. 501.  Rule 501 establishes that federal common law generally controls attorney client privilege analysis in cases arising under federal law, and requires district courts to apply state law in connection with cases governed by state law.  *See F.D.I.C. v. Fidelity & Deposit Co. of Maryland* 196 F.R.D. 375, 379 (S.D.Cal.,2000);  *Davis v. City of Seattle,* 2007 WL 4166154, 2 (W.D. Wash. 2007) (The federal common law of attorney-client privilege applies to federal claims, while state law concerning privilege governs as to claims or defenses for which state law provides the rule of decision).

Plaintiff has brought claims under both federal law and state law, thus triggering consideration of both in this analysis.  *See, e.g., C.T. v. Liberal School Dist. USD,* 2008 WL 217203, 2 (D.Kan. 2008) ("[W]ith both federal claims and pendant state law claims implicated, [the court] should consider both" state law and federal law regarding attorney-client privilege).[3] As noted below, when considering both state and federal law, it is clear that no waiver of the attorney client privilege occurred.

## II. UNDER BOTH FEDERAL AND STATE LAW, THE SUBJECT COMMUNICATION REMAINS PRIVILEGED

Apple's motion is entirely based on the argument that there was a *waiver* of an attorney client privileged communication, because the subject communication was disclosed to Dave Malone, who Apple paints as an "outsider," working for Power Music and not Podfitness.  In other words, Apple does not challenge whether the privilege existed in the first instance, only that it was lost.  The conclusion is not supported by the facts, nor well established federal and state law precedent.

---

[3]  The Court held that if a conflict between the bodies of law exist on the issue of privilege, "then an analytical solution must be worked out to accommodate the conflicting policies embodied in the state and federal privilege law." *Id.* at 2.  However, if both bodies of law "support application of the attorney-client privilege" then this analysis need not be conducted. *Id.*

- 5 -

CASE NO. C 06-05805 SBA  OPPOSITION TO MOTION FOR DISCLOSURE OF THE REDACTED INFORMATION IN DOCUMENT NUMBER PF001014

## A. Dave Malone's Employment of the Podfitness/Power Music Partnership Precludes Disclosure of the Privileged Communication

Under section 952 of California's Code of Evidence, communication of information by an attorney to a client in the presence of a third person does <u>not</u> destroy the confidentiality of the communication if the third person is "present to further the interest of the client in the consultation." Cal. Evid. Code § 952. Rather, when the third person is present for that purpose, confidentiality of communication is maintained. *Insurance Co. of North America v. Superior Court*, 108 Cal.App.3d 758, 762 -763 (Cal.App. 1980).

Indeed, "a corporation, like a natural person, is entitled to the full benefit of the attorney-client privilege.… [a]nd a corporation, again like a natural person, is not limited to employment of full-time officers, agents, and employees, but it may avail itself of the services of part-time employees, ad hoc consultants, temporary advisers, and other servants it selects for specific purposes." *Id.* at 763 (citing Cal. Corp. Code, § 207; Lab. Code, §§ 3351, 3357.). "The key concept is need to know. While involvement of an *unnecessary* third person in attorney-client communications destroys confidentiality, involvement of third persons to whom disclosure is reasonably *necessary* to further the purpose of the legal consultation preserves confidentiality of communication." *Id.* at 765 -766.

Federal law also recognizes that while disclosure to third parties generally waives the attorney-client privilege, there is an exception for independent contractors and other third parties who are *functional equivalents* of employees. *See Memry Corp. v. Kentucky Oil Technology*, N.V. 2007 WL 39373, 2 (N.D.Cal. 2007); *Davis v. City of Seattle,* 2007 WL 4166154, *2 (W.D.Wash. 2007) (In following the functional equivalent doctrine used in the Eighth Circuit, held that the privilege was not destroyed because the third party was the functional equivalent of an employee of the party).

Indeed, Courts consider the policy behind corporate attorney-client privilege determinations, as enunciated by the Supreme Court in *Upjohn Co. v. United States,* 449 U.S. 383 (1981). In doing so, court recognize that while a person may be technically an independent

- 6 -

CASE NO. C 06-05805 SBA

OPPOSITION TO MOTION FOR DISCLOSURE OF THE REDACTED INFORMATION IN DOCUMENT NUMBER PF001014

consultant, and not an employee, this does not necessarily equate to waiver. For example, in *McCaugherty v. Siffermann,* 132 F.R.D. 234 (N.D.Cal.1990), the court held that under the Supreme Court's analysis in *Upjohn,* the privilege would apply to communications between two independent consultants hired by the client and the client's lawyers just as it would apply to communications between the client's employees and its lawyers. *McCaugherty*, 132 F.R.D. at 239. Although the district court eventually held the privilege inapplicable for other reasons, it held that there was "no principled basis for distinguishing consultants… from the kinds of employees to whom the Supreme Court extended the protection of the privilege in *Upjohn.*" *McCaugherty,* 132 F.R.D. at 239.

In the well known case of *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994), the Eighth Circuit also recognized this principle. In citing to the *McCaugherty* case, the Court aptly held "that when applying the attorney-client privilege to a corporation or partnership, it is *inappropriate* to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors." *In re Bieter Co.*, 16 F.3d at 937 (emphasis added).

Here, whether Dave Malone is categorized as a shared employee, an employee of the Podfitness / Power Music partnership, or as an employee of Power Music who in provided independent consulting for Podfitness – the privilege remains intact. Indeed, his involvement was reasonably *necessary* to further the purpose of the legal consultation preserves confidentiality of communication.

The evidence demonstrates that as of November 29, 2005, the day in question, Dave Malone was a shared, key employee of Podfitness and Power Music. Stated otherwise, he was an employee of the Podfitness/Power Music partnership. And, while he was technically on the payroll of Power Music, he was indisputably the *de facto* employee and the "functional equivalent" of a Podfitness employee during the time in question. He reported directly to Jeff Hays, President of Podfitness. He was the person responsible for the design work and implementation of design work in Podfitness' marketing efforts. And, even if Dave Malone was

- 7 -

CASE NO. C 06-05805 SBA                                   OPPOSITION TO MOTION FOR DISCLOSURE OF THE
                                                          REDACTED INFORMATION IN DOCUMENT NUMBER PF001014

1 not an employee, he obviously falls into the category of an "ad hoc consultant[], temporary adviser[], [or] other servant[] . . . select[ed] for [a] specific purpose[]." *Insurance Co. of North America*, 108 Cal.App.3d at 763. Thus, disclosure of the subject legal advice couldn't have been given to a more necessary person in order to carry out the common purpose of such advice.

Consequently, Apple's request to obtain disclosure of the privileged communication, should be denied.

### B. The Common Interest Doctrine Precludes Disclosure of the Privileged Communication

Independent of the above, the "common interest" doctrine also requires that the court uphold the privilege in this situation.

The common interest doctrine extends to "interested third parties who have a community of interests with respect to the subject matter of the communications." *Nidec Corp. v. Victor Co. of Japan*, 2007 WL 1994171 *3 (N.D.Cal. 2007); *In re Regents of the Univ. of California,* 101 F.3d 1386, 1390 (Fed.Cir.1996) (noting that the common interest privilege may apply to a patent holder and its licensee). And, contrary to Apple's position, "the protection of the privilege under the community of interest rationale …is not limited to joint litigation preparation efforts. It is applicable whenever parties with common interests joint forces for the purpose of obtaining more effective legal assistance." *Id.* at 3 (Citing Rice, Attorney-Client Privilege in the United States § 4:36, at 216). The Tenth Circuit (where the subject communication occurred and where Podfitness is located), court have likewise recognized that "the common interest doctrine thus acts as an exception to the general waiver rule by facilitating cooperative efforts among parties who share common interests." When applying the common interest doctrine, it is clear that the subject communication must remain privileged.

Here, Apple appears to take issue with the timing of the relationship between Podfitness and Power Music, citing to the January 2006 agreement as the foundation of its argument. Apple's reliance on this document is misplaced.

- 8 -

CASE NO. C 06-05805 SBA     OPPOSITION TO MOTION FOR DISCLOSURE OF THE REDACTED INFORMATION IN DOCUMENT NUMBER PF001014

There is no dispute that Podfitness and Power Music had a common interest in procuring and carrying out the subject legal advice on the date of its discussion with Dave Malone. As of November 29, 2005 (the date in question), Power Music and Podfitness were jointly pursuing the Podfitness business. Power Music had already reached an agreement to be an owner of Podfitness and provide substantial contribution in its joint venture with Podfitness. While Apple is fixated on the date of Power Music's written agreement reflecting the percentage of ownership acquired by Power Music for their participation in the partnership venture as January 2006, the operative fact is that the partnership relationship and agreement in this regard was reached months earlier, with the partnership beginning in September or October 2005 – long before the November 29, 2005 meeting in which the subject privileged communication was discussed.[4] *See Facts, supra*.

Indeed, prior to November 29, 2005, Podfitness was already literally running part of its operations out of the Power Music office. Power Music had devoted substantial resources to the partnership venture at that point. Indeed, the January 2006 Agreement itself acknowledges that Power Music had *already* contributed its investment to Podfitness and had agreed to provide substantial services to Podfitness. Clearly, as an agreed upon equity holder and partner in the venture known as Podfitness, Power Music had the same interest in the legal advice related to Podfitness as Podfitness did.

Moreover, as noted above, Dave Malone was not an "outsider" as portrayed by Apple, but rather a shared employee of Podfitness and Power Music as of November 29, 2005. He was an employee of the Podfitness/Power Music partnership, and while he was technically on the payroll of Power Music, he was indisputably the *de facto* employee and the "functional equivalent" of a Podfitness employee during the time in question. As the person responsible for the design work and implementation of design work in Podfitness' marketing efforts, disclosure

---

[4] Otherwise, why would Power Music be giving Podfitness the cash equivalent of tens of thousands, if not hundreds of thousands of dollars in services and assistance.

of the subject legal advice couldn't have been given to a more necessary person in order to carry out the common purpose of such advice.

## CONCLUSION

For the foregoing reasons, Apple's Motion should be denied.

DATED this 18th day of April 2008.

**MAGLEBY & GREENWOOD, P.C.**

_____
James E. Magleby
Jason A. McNeill

**KERR & WAGSTAFFE LLP**
James M. Wagstaffe

Attorneys for Defendant and
 Counterclaim Plaintiff Podfitness, Inc.

- 10 -

CASE NO. C 06-05805 SBA    OPPOSITION TO MOTION FOR DISCLOSURE OF THE REDACTED INFORMATION IN DOCUMENT NUMBER PF001014

## PROOF OF SERVICE

I, Bethany Layton, declare that I am a resident of the State of Utah, over the age of eighteen years, and not a party to the within action. My business address is MAGLEBY & GREENWOOD, P.C., 170 South Main Street, Suite 350, Salt Lake City, Utah 84101

On April 18, 2008, I served the following document(s):

- **Opposition to Motion for Disclosure of the Redacted Information in Document Number PF001014**

on the parties listed below as follows:

| | |
|---|---|
| Lisa M. Martens<br>martens@fr.com<br>Andrew M. Abrams<br>abrams@fr.com<br>FISH & RICHARDSON P.C.<br>12390 El Camino Real<br>San Diego, California 92130 | David J. Miclean<br>miclean@fr.com<br>FISH & RICHARDSON P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, California 94063 |
| James M. Wagstaffe<br>wagstaffe@kerrwagstaffe.com<br>KERR & WAGSTAFFE LLP<br>100 Spear Street, Suite 1800<br>San Francisco, CA 94105-1528 | |

☒ Via CM/ECF System

I declare under penalty of perjury under the laws of the State of Utah that the foregoing is true and correct.

Executed on April 18, 2008, at Salt Lake City, Utah.

_____
Bethany Layton